Drake, Ch. J.,
delivered the opinion of the court:
In the sundry civil act of August 7, 1882, (22 Stat. L., 321, ch. 133,) among the appropriations “ Under the Department of the Interior,” is the following clause:
“ For the erection of a brick and metal fire-proof building, to be used and occupied by the Pension Bureau, in accordance with plans to be approved by the Secretary of "War and the Secretary of the Interior, under the supervision of General M. O. Meigs, late Quartermaster-General, United States Army, retired, the sum of $250,000, appropriated by the sundry civil act approved March 3,1881, is hereby reappropriated and made available for this purpose.”
The place given in the act to this provision, together with the fact that the Pension Bureau belongs to the'Department of the Interior, would seem to leave no room for question that the money there appropriated was to be expended under the authority and superintendence of the head of that Department.
Evidently, too, it was the intention of 'Congress that there should be appointed a supervisor of the erection of the building,’ and that the claimant should be selected for that service, notwithstanding the fact of his being a retired officer of the army.
*502 The compensation of the supervisor was not specifically named or appropriated for; but it was doubtless the intention of Congress that it should be fixed by the Secretary of the Interior, and be paid, as any other legitimate expense, out of the appropriation.
The Secretary of the Interior engaged the claimant’s supervising services at a per diem compensation of $10. This was paid him up to November 1, 1883; but since that date it has been refused him, under instructions given by the First Comptroller of the Treasury to the disbursing clerk of the Department of the Interior, on the ground that, being a retired officer of the army, and receiving pay as such, he is not lawfully entitled to any compensation for his services, unless an express appropriation be made to pay him therefor.
For pay from November 1,1883, to February 29, 1884, inclusive, this suit is brought.
In support of the defense the government relies on sections 1704 and 1765 of the Eevised Statutes, which are, as follows:
u Sec. 1764. No allowance or compensation shall be made to any officer or clerk, by reason of the discharge of duties which belong to any other officer or clerk in the same or any other Department; and no allowance or compensation shall be made for any extra services whatever, which any officer or clerk may be required to perform, unless expressly authorized by law.
■ “ Seo. 1765. No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation.”
These sections, beyond doubt, afford a wide field for discussion and difference of opinion as to their intent and scope; but we do not deem it necessary to enter it; for they have been passed upon twice by the Supreme Court in such a way as, in our judgment, to settle the questions involved here.
-It is claimed by defendants’ counsel that the act imposed new duties upon the claimant as an army officer, and that the law forbids his receiving extra pay for performing those duties, unless “ expressly authorized by law.” We do not concur in *503 this view of the effect of naming- him in the act for the supervision of the erection of the building. An existing law forbade any retired officer’s being assigned to any duty whatever; and if it had been the intention of Congress to set aside that law as to him, and to impose this duty on- him as a retired officer, it is reasonable to suppose that more direct and unequivocal terms would have been used, than the mere designation of him by name as the person to render the service. We regard that designation as only an expression of the will of Congress that he should be employed for that purpose. He is, therefore-, not claiming extra compensation for extra services as a retired officer, but a stipulated pay for civil services rendered in a purely civil employment, having no connection with his military office. So viewed, the bearing of the decisions of the Supreme Court, now to be referred to, will be manifest.
In Converse v. United States, (21 Howard, 463,) the question was whether a custom-house officer, whose duty it was to make certain contracts and disbursements in his district, was entitled to compensation for service of that description rendered out of his district, under orders of the Secretary of the Treasury. Under the sections now before us it was contended that he could not be paid for the latter service; but the Supreme Court said:
u The Legislature contemplated duties imposed by superior authority upon the officer as a part of his duty, and which the superior authority had in the emergency a right to impose, and the officer was bound to obey, although they were extra and additional to what had previously been required. Butthey can by no fair interpretation be held to embrace an employment which has no affinity or connection, either in its character or by law or usage, with the line of his official duty, and where the service to be performed is of a different character and for a different place, and the amount of compensation regulated by law.”
In that court the question arose again, and was passed upon, as recently as the 3d of March last, in United States v. Brindle, (110 U. S., 688.) A receiver of public moneys in Kansas was appointed agent for the sale of Indian trust lands under a treaty with an Indian tribe; and the court, citing the second sentence of this quotation from the decision in the' previous case, held, that he was entitled to commissions on those sales, in addition *504 to the full compensation as receiver allowed him by law. And in regard to the matter of his compensation the court ruled that while the exact amount of it was not fixed, 11 it was clearly to be inferred that such compensation as the law implies where labor is performed by one at the request of another, that is to say, a reasonable compensation would be paid.”
These cases seem to us to be decisive of the present one. The only difference between them and it is in the fact that in each of them the party held an office with active duties to be performed, while the present claimant held one withno such duties; but this does not appear to affect the result. The point in each of them was, whether the party was entitled to compensation for services rendered in an employment which had no affinity or connection with the line of his official duty; and the Supreme Court held that he was. This disposes of the objections raised against the claimant’s demand in this case.
Judgment will be entered in his favor for $1,210.