Davis, J.,
delivered the opinion of the court:
The claimant, while a clerk in the office of the auditor of the District of Columbia, was appointed by this court, under the provisions of the act of June 16, 1880, referee in various cases *121 against tbe District of Columbia. The duties thus devolved upon him he performed, and in due course presented to the Commissioners of the District his bill for services, approved and allowed by the court. The Commissioners thereupon submitted to the President the following question:
“ Inasmuch as his [the claimant’s] right to receive these awards has been challenged on account' of his employment as clerk in the auditor’s office, we have the honor to request that this question be referred to the honorable Attorney-General for his opinion.”
The Attorney-General held that the claimant “is entitled to the compensation claimed, so far as the objection referred to is concerned.” As, however, the First Comptroller refuses to countersign a warrant or requisition for the payment of the claimant he brings this suit.
We see no reason to disagree with the opinion of the learned Attorney-General in this matter. The objection is apparently founded upon sections 1763, 1764, and 1765 of the Revised Statutes, and the Attorney-General considers more particularly section 1763, which provides that—
“No person who holds an office, the salary or annual compensation attached to which amounts to the sum of $2,500 shall receive compensation for discharging the duties of any other office, unless expressly authorized by law.”
And it is argued (to state briefly the substance of the opinion of the Attorney-General) that the offices referred to by this section “ areoffices under the Government of the United States; ” that it is questionable whether a clerk in the District auditor’s office is embraced in its provisions; but waiving that, a referee appointed by this court, under the act of 1880, does not hold an office within the meaning of the section.
“ An office is a public station or employment, conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument, and duties. (United States v. Hartwell, 6 Wall., 393.) A referee is appointed to perform a specific duty, and as soon as that duty is performed the service ■ceases. It is a duty attached to the person selected under the said act of 16th June, 1889. Should the referee die a new reference would have to be awarded. The referee is paid by the Government, but the District is charged with the amount. It is his duty to be disinterested in his action and to represent both claimant and defendant.”
The Attorney-General further holds that even if the claim *122 ant’s office be embraced in the description of section 1763 of the Eevised Statutes, still the payment demanded could only be disputed on the ground that it is for extra services which have no connection with the duties of his office (citing Converse v. United States, 21 Howard, 463; United States v. Brindle, 110 U. S. R., 694; and 10 Stat. L., p. 100, § 18).
The fact that the Comptroller has not felt authorized to acquiesce in the result reached by the Attorney-General makes it proper for us to suggest some considerations iu. addition te those set forth in the opinion thus briefly epitomized.
Two questions are in effect presented : First, is the claimant an officer of the United States within the meaning of the statutes in question? Second, if so, do these statutes prohibit him from receiving this payment as referee?
Prior to 1871 the District of Columbia was governed by officers elected by the people, with a mayor as chief executive in the city of Washington, a levy court having control of what is commonly known as the county, that is, the part of the District outside the two cities of Washington and Georgetown, while the latter city had a separate and independent municipal government of its own. (16 Stat. L., 419.) No officer of the District at that time could be held to be an officer of the United States.
Then came the act of 1871, by which a government similar inform to that of a Territory was instituted for the whole District, with a governor, secretary, and council appointed by the President, a house of delegates elected by the people, and a board of public works. (16 Stat. L., 427.) Yet as to this board, the Supreme Court decided (Barnes v. The District of Columbia, 91 U. S. R., 540) that its members, although appointed by the President after confirmation by the Senate, and paid from the Federal Treasury, were officers of the municipal corporation of the District of Columbia. (See also § 2, act of 1871, 16 Stat. L., 419.) In 1878 the present government was created (20-Stat. L., 102) by a law which expressly provides “that the District of Columbia shall remain and continue a municipal corporation * * * and the Commissioners herein provided for shall be deemed and taken as officers oí such corporation.’^
Can, then, a clerk holding his position under such municipal officers, appointed by them, and subject to removal by them at their pleasure, be regarded as other than a subordinate munici *123 pal officer? To bold otherwise would involvethe conclusion that Congress could and would give to a municipal officer power to appoint an officer of the United States, a power which is limited by the Constitution to the President, the courts of law, or the heads of Departments. (Art. II, § 2.)
As claimant’s salary is less than $2,500 per annum (a fact which was not before the Attorney-General), section 1763,. Eevised Statutes, does not reach him; neither does section 1764, which provides that no compensation shall be made to any officer or clerk for discharging the duties of another officer or clerk in the same or any other Department, or for any extra services whatever, unless expressly authorized by law;: for, as to the first provision of this section, the claimant is not an officer or clerk in a Department, nor were the duties performed by him departmental in their nature; and as to the second provision, it is sufficient to note th;it the services were in no sense “extra,” for the employment had no “affinity or connection, either in its character or by law or usage, with the line of his official duty.” (Converse v. The United States, 21 Howard, 463.)
Section 1765 is broader in its terms, and prohibits “ any officer in any branch of the public service or any other person whose salary, pay, or emoluments are fixed by law or regulation” from receiving “ any additional pay, extra allowance, or compensation in any form whatever for the disbursement of public money, or for any other service or duty whatever,”' unless expressly authorized by law and explicitly appropriated for that purpose. The Supreme Court has construed this section in the case of Converse v. The United States (21 Howard, 463), in which the Act of August 23, 1842 (Stat. L., v. 5, 510), now appearing as section 1765, Eevised Statutes, was considered with other similar legislation then in force. The court said the acts “cannot, by fair interpretation, be held to embrace an employment which has no affinity or connection, either in its character or by law or usage, with the line of his official duty, and where the service to be performed is of a different character and for a different place, and the amount of compensation regulated by law.”
This interpretation was affirmed in Brindle v. The United States (110 U. S. R., 668), with the addition that where the compensation was not fixed by law a reasonable compensation *124 was implied. The principle of these decisions has been followed by this court in several cases (Meigs’s Case, 19 C. Cls. R., 497; Landram’s Case, 16 id., 71; Collins’s Case, 15 id., 22), and the case at bar, in our opinion, falls witbin its meaning and effect.
Judgment will be entered for the claimant in the sum of $930.