## LAUGHTER v. UNITED STATES.*

(Circuit Court of Appeals, Fifth Circuit.   November 11, 1919.   Rehearing Denied December 6, 1919.)

No. 3415.

1. ARMY AND NAVY ⬤═40—CONTINUANCE OF SELECTIVE SERVICE ACT IN EFFECT AFTER CESSATION OF HOSTILITIES.

The provisions of Selective Service Act, § 12 (Comp. St. 1918, § 2019a), prohibiting the sale of intoxicating liquors at any military station, cantonment, camp, etc., as well as prohibiting the sale of liquors to officers or men in uniform, are not limited to the emergency which called the act into being, but continued in force after the cessation of active hostilities.

2. INDICTMENT AND INFORMATION ⬤═203—REVERSAL FOR INSUFFICIENT COUNTS, WHERE OTHER COUNTS SUPPORT SENTENCE.

Where a conviction on the third and fourth counts of the indictment was sufficient to sustain the sentence imposed, the failure of other counts of the indictment to charge the commission of an offense will not warrant reversal of the judgment rendered.

In Error to the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Lucian C. Laughter was convicted of violating the Reed Amendment, and he brings error.   Affirmed.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 251 U. S. ——, 40 Sup. Ct. 220, 64 L. Ed. ——.

Albert J. Baskin, of Ft. Worth, Tex., for plaintiff in error.

W. M. Odell, U. S. Atty., of Ft. Worth, Tex., and W. B. Harrell, Asst. U. S. Atty., of Dallas, Tex.

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

WALKER, Circuit Judge. The indictment in this case against the plaintiff in error and another was filed on the 19th day of April, 1919, and contained six counts, the fifth and sixth of which were dismissed on motion of the district attorney. After a severance had been ordered, and a motion of the plaintiff in error to quash the first, second, third, and fourth counts had been overruled, he pleaded guilty to the third and fourth counts, and not guilty to the first and second counts. Following a verdict of guilty on the four counts on which he was tried, he was sentenced to imprisonment in the penitentiary for the term of 15 months.

The first count of the indictment charged a conspiracy to commit an offense under the provision of the act of Congress approved March 3, 1917 (39 Stat. 1069, c. 162 [Comp. St. 1918, § 8739a]), commonly referred to as the Reed Amendment. The second count charged the commission of an offense denounced by that provision. The third count charged that, on or about the 10th day of March, 1919, the persons indicted conspired to transmit, carry, and transport specified alcoholic liquors—

"into and within a certain military zone, five miles around a certain military camp located in Tarrant county, Texas, known and designated as 'Camp Bowie,' at which officers and enlisted men, not less than two hundred and fifty in number, were and had been stationed for more than thirty consecutive days next before said March 10, 1919; said transactions being under such circumstances that same did not come within any of the exceptions or exemptions set out and specified in the act of Congress, approved May 15, 1917, known and referred to as the 'Selective Service Law,' or of any of the regulations made, established and promulgated by the President of the United States, as Commander-in-Chief of the Army of the United States, under and by virtue of the terms and provisions of said law."

The fourth count charged the doing of the thing which the third count charged was conspired to be done.

[1] On the ground that the Selective Service Act (Act May 18, 1917, c. 15, 40 Stat. 76) as a result of the passing of the emergency which occasioned its enactment, was no longer in force when the indictment was filed, it is contended in behalf of the plaintiff in error that no criminal offense was charged by either the third or the fourth count of the indictment. The following is the provision of that act which must be relied on to support the third and fourth counts of the indictment:

"Sec. 12. That the President of the United States, as Commander-in-Chief of the Army, is authorized to make such regulations governing the prohibition of alcoholic liquors in or near military camps and to the officers and enlisted men of the army as he may from time to time deem necessary or advisable: Provided, that no person, corporation, partnership, or association shall sell, supply, or have in his or its possession any intoxicating or spirituous liquors at any military station, cantonment, camp, fort, post, officers' or en-

listed men's club, which is being used at the time for military purposes under this act, but the Secretary of War may make regulations permitting the sale and use of intoxicating liquors for medicinal purposes. It shall be unlawful to sell any intoxicating liquor, including beer, ale, or wine, to any officer or member of the military forces while in uniform, except as herein provided. Any person, corporation, partnership, or association violating the provisions of this section of · the regulations made thereunder shall, unless otherwise punishable under the Articles of War, be deemed guilty of a misdemeanor and be punished by a fine of not more than $1,000 or imprisonment for not more than twelve months, or both." 40 Stat. 82 (Comp. St. 1918, § 2019a).

Nothing in the terms of the act shows that the whole of it was intended to be effective only for the period of the war in which the country was engaged at the time the act was passed. Parts of the act are in terms made effective "for the period of the present emergency," or "during the present war." The above-quoted section contains no such limitation or restriction. The effectiveness of that provision is not made contingent upon the continuance of the emergency or state of war in existence at the time of its enactment. The authority of the President, as Commander-in-Chief of the Army, to make regulations governing the prohibition of alcoholic liquors in or near military camps, is conferred without limitation as to the time of its exercise. This being true, it is not necessary to determine whether the war in which the United States was engaged had or had not ended when the acts charged ·in the third and fourth counts were done, or when the indictment was filed and the trial under it occurred. The offenses charged in the third and fourth counts were capable of being committed after the end of the war. The conviction under those counts is not subject to be reversed on the ground that they did not charge the commission of criminal offenses.

[2] The conviction on the third and fourth counts being sufficient to sustain the sentence which was imposed, a failure of the first and second counts to charge the commission of a criminal offense would not justify a reversal of the judgment rendered. Frankfurt v. United States, 231 Fed. 903, 146 C. C. A. 99. It follows that it is unnecessary to consider the question of the sufficiency of the first and second counts.

The judgment is affirmed.