In the Matter of the Application of ANTHONY BIANCO, Respondent, by His Guardian ad Litem, for a Peremptory Mandamus Order against ELMORE F. AUSTIN, as Commanding Officer of the 258th C. A. C., N. G. N. Y., Appellant.

First Department, December 28, 1922.

Military — mandamus to compel commanding officer to discharge soldier from New York National Guard — soldier enlisted before he was eighteen years of age on false affidavit that he was over eighteen — New York National Guard only potential part of United States Army in time of peace — State courts have jurisdiction in time of peace of proceedings to compel discharge of soldier from National Guard — mandamus does not lie against commanding officer for Governor alone has power to order discharge, under National Guard regulations 1922, par. 348, subd. 2-e — soldier estopped from obtaining discharge by fraudulent misstatement of age.

In time of peace the New York National Guard is only a potential part of the United States Army under the National Defense Act and does not in fact become a part thereof until Congress has made the requisite declaration of the existence of an emergency.

The courts of this State have jurisdiction, in time of peace, of a proceeding to secure the discharge of a soldier in the National Guard of this State.

The discharge of a soldier in the National Guard on the ground that at the time of his enlistment he was under the age of eighteen years can be directed only by the Governor of the State under National Guard regulations 1922, paragraph 348, subdivision 2-e, and, therefore, mandamus does not lie against a commanding officer of the National Guard to compel the discharge of a soldier on the ground stated.

Furthermore, a soldier in the National Guard is not entitled to be discharged on his own application on the ground that at the time of his enlistment he was under the age of eighteen years, where it appears that he swore falsely at that time that he was over the age of eighteen years; his fraudulent misstatement estops him from obtaining his discharge on his own application.

APPEAL by the defendant, Elmore F. Austin, from a peremptory mandamus order of the Supreme Court, made at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 2d day of August, 1922, commanding the defendant, as commanding officer of the 258th C. A. C., N. G. N. Y., immediately to issue a discharge of the petitioner from said regiment.

*Arthur V. McDermott, Division Judge Advocate, N. G. N. Y.,* of counsel [*George W. Burleigh, State Judge Advocate, N. G. N. Y.,* and *Howard Thayer Kingsbury, Judge Advocate, N. G. N. Y.,* with him on the brief], for the appellant.

*John J. Ryan* of counsel, for the respondent.

DOWLING, J.:

This is an appeal from a mandamus order directing the defendant, as commanding officer of the 258th Coast Artillery Corps, New York National Guard, to issue a discharge of the petitioner from said regiment. The petitioner's designation of the regiment is erroneous, the correct title being " 258th Field Artillery."

The petition was made and the order granted upon the ground that the petitioner enlisted when under the age of eighteen years without the consent of his parents.

It appears from the petition that the petitioner enlisted on October 20, 1920; that he attained the age of eighteen years on January 10, 1922, and that this proceeding was not instituted until June 20, 1922.

It further appears from the uncontradicted opposing affidavit that the petitioner, at the time of his enlistment, swore that he was then over the age of eighteen, being eighteen years and nine months old; that by his enlistment contract he enlisted for the term of three years in the " National Guard of the United States and of the State of New York; " and that he attended drills and received pay from the Federal government therefor after attaining the age of eighteen years. The affidavit also shows that the 258th Field Artillery was on March 2, 1921, accepted and recognized by the United States government as a National Guard regiment in accordance with the provisions of the National Defense Act (Act of Congress, June 3, 1916; amended, Act of June 4, 1920)* and that on the same date the petitioner was mustered into the National Guard of the United States.

The learned Judge Advocate contends that the State courts are without jurisdiction of the proceeding, and that the petitioner assumed an obligation to the Federal government from which the State is unable to release him. He points out that the National Guard of to-day is of an entirely different nature and status from the National Guard as it existed prior to 1916; that the old National Guard was, for all practical purposes, a State organization of militia subject almost exclusively to State control, regulated by Federal legislation only to a slight degree, and liable to call into Federal service only as militia for the purposes specified in the Constitution, viz., to suppress insurrection, repel invasion and enforce the laws of the Union (U. S. Const. art. 1, § 8); but that when in 1916 Congress enacted the National Defense Act (before referred to) under the authority delegated to it by the United

* See 39 U. S. Stat. at Large, 166, chap. 134, as amd. by 41 id. 759, chap. 227.— [REP.

States Constitution, for the first time there was created a definite military policy for the United States, contemplating the maintenance of a regular army of 210,000 men, together with a National Guard of 437,000 men and an organized Reserve Corps, both of the latter so organized, trained and subject to Federal control as to be immediately available for service as organized units of an organized national force in time of emergency.

As the act itself provides:

" Sec. 3. Organization of the Army.— The organized peace establishment, including the Regular Army, the National Guard and the Organized Reserves, shall include all of those divisions and other military organizations necessary to form the basis for a complete and immediate mobilization for the national defense in the event of a national emergency declared by Congress." (39 U. S. Stat. at Large, 166, § 3, as amd. by 41 id. 759, § 3.)

Because the act establishes a definite, comprehensive scheme for the organization, training, discipline and administration of the National Guard under Federal supervision and control as a single national unit in place of the then existing independent National Guard organizations in the respective States, and provides for calling the National Guard into Federal service not merely as militia under the clause of the Constitution above referred to, but as an organized component part of the United States Army in the event of a national emergency declared by Congress, it is contended that the act makes the National Guard a part of the army. Further, that as the petitioner voluntarily assumed an obligation to obey the orders of the President of the United States and to render military service to the United States beyond that required of the State Militia, a State court is without jurisdiction to annul or set aside the petitioner's obligation to the Federal government.

But in these contentions appellant loses sight of the fact that the National Guard is only a potential part of the United States Army and does not in fact become a part thereof until Congress has made the requisite declaration of the existence of an emergency.

The oath of allegiance on enlistment is both to the United States and to the State, and the promise to obey the orders of the President of the United States and of the Governor of the State of New York (as well as of the soldier's officers) is because the Governor is Commander-in-Chief of the National Guard until Congress declares an emergency to exist and the Guard becomes an actual part of the National Army when the President becomes Commander-in-Chief.

I reach the conclusion, therefore, that in time of peace the State

courts have jurisdiction of a proceeding to secure the discharge of a member of the National Guard of the State.

But, in my opinion, there are two objections to the granting of relief herein. The first is, that the office of a writ of mandamus (now mandamus order) is to compel a public officer to do any act which he is required to do by law. (*People ex rel. Harris* v. *Commissioners*, 149 N. Y. 26; *Matter of Molineux* v. *Collins*, 177 id. 395; *Matter of Dental Society* v. *Jacobs*, 103 App. Div. 86.) The right to order the discharge of an enlisted man, where Federal recognition has been extended to the unit of the National Guard of which he is a member, is conferred upon the Governor of the State in certain specified cases, which includes enlistments under eighteen years of age. (National Guard Regulations, 1922, ¶ 348, subd. 2-e.)

Under these provisions the Governor may order the petitioner's discharge, but the defendant without such authorization cannot issue it. Under these conditions, mandamus will not lie.

The second objection is, that the petitioner having fraudulently misstated his age, is estopped from obtaining his discharge on his own application.

This proceeding is brought by the petitioner, not by his parents. He appears by a guardian *ad litem*, but the application is made on his personal behalf. There is no claim that his parents are now seeking or at any time have sought his discharge.

The relief sought by the petitioner rests solely upon the ground that he was under eighteen years of age at the time of his enlistment.

The Supreme Court of the United States has expressly held that the enlistment of a minor under the statutory age, without the consent of his parents, is not void but merely voidable, and that in no event will it be set aside on the application of the infant. (*Matter of Morrissey*, 137 U. S. 157.) In that case it appeared that the statutes, as then existing, prohibited enlistments under twenty-one years of age without the parents' consent. The petitioner was seventeen years old when he enlisted. The court said: " This provision is for the benefit of the parent or guardian. It means simply that the government will not disturb the control of parent or guardian over his or her child without consent. It gives the right to such parent * * * to invoke the aid of the court, * * * but it gives no privilege to the minor. * * *

" An enlistment is not a contract only, but effects a change of status. * * * It is not, therefore, like an ordinary contract, voidable by the infant. * * *

" In this case the parent never insisted upon her right of custody * * *. The contract of enlistment was good so far

as the petitioner is concerned. . He was not only *de facto,* but *de jure,* a soldier — amenable to military jurisdiction."

The *Morrissey* case was decided in 1890 and the principle therein established has been uniformly followed since that time. (*Ex parte Rush,* 246 Fed. Rep. 172; *Hoskins* v. *Pell,* 239 id. 279; *Ex parte Dostal,* 243 id. 664.)

Respondent relies upon the case of *International Text Book Co.* v. *Connelly* (206 N. Y. 188, 197) as supporting the right of an infant who had misstated his age to set up his infancy as a defense to a contract; but that is a case of a simple contract, with no change of status involved, as in the case now under consideration. He also cites *People ex rel. Frey* v. *Warden, etc.* (100 N. Y. 20) and *People ex rel. Smith* v. *Hoffman* (166 id. 462), but they are not determinative of this case, though they sustain generally the power of the State court to review the determination of military tribunals.

Upon the facts shown in the replying affidavit of relator's attorney, which are not controverted, I do not think that the infant can be held to have waived any rights he had to a discharge, nor was he guilty of laches.

For the foregoing reasons, the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion for a mandamus denied.

· CLARKE, P. J., SMITH, PAGE and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied.    .