NEBRASKA NATIONAL GUARD, APPELLANT, V. FRED J. MORGAN, APPELLEE.

FILED JULY 7, 1924. No. 24050.

1. **Master and Servant:** NEBRASKA NATIONAL GUARD: COMPENSATION TO EMPLOYEE. The Nebraska National Guard is a governmental agency of the state within the employers' liability law,

and an "employee" thereof is entitled to compensation for injuries received in consequence of an accident arising out of and in the course of such employment.

2. ———: "CASUAL" EMPLOYMENT.    An employment is not "casual," within the terms of the employers' liability law, when the term of employment is indefinite and the work to be performed is connected with the regular business and occupation of the employer.

3. ———: COMPENSATION: EMPLOYEE OF NATIONAL GUARD.    Preparing the grounds for an encampment of the Nebraska National Guard, held in pursuance of a statutory requirement that such an encampment be held for at least five days each year, is a work in the usual course of "business or occupation" of the guard, if the quoted words have any application to an employee of the state, which we do not decide.

4. Evidence examined, and *held* to sustain the finding of the district court that applicant's injuries resulted in total disability.

APPEAL from the district court for Lancaster county: GEORGE F. CORCORAN, JUDGE.  *Affirmed.*

*O. S. Spillman, Attorney General,* and *Lee Basye,* for appellant.

*Peterson & Devoe, contra.*

Heard before LETTON, ROSE and DEAN, JJ., BLACKLEDGE and REDICK, District Judges.

REDICK, District Judge.

This is an action under the workmen's compensation law. The plaintiff, Fred J. Morgan, recovered an award before the compensation commissioner, which was confirmed on appeal to the district court for Lancaster county and a decree entered in favor of plaintiff.  The defendant, Nebraska National Guard, has appealed to this court.

The facts out of which the controversy arises are substantially as follows: An encampment of the Nebraska National Guard was to be held in August, 1923, at grounds furnished for that purpose by the United States government near the city of Ashland, in Saunders county.  It was necessary to prepare the grounds for such encamp-

ment, and, among other things, to erect shed kitchens for each company, properly screened for the purpose of excluding flies. It was deemed necessary by the adjutant general in charge of the encampment to employ a number of carpenters to erect such kitchens, and, among others, plaintiff was so employed on July 23, and worked continuously for six days until he met with the accident which is the basis of his claim for compensation. On Saturday afternoon, July 28, while plaintiff, as he says, was in search of nails for the purpose of going on with his work, he fell over some obstruction in such a way as to fracture the surgical neck of the femur in his left hip. The plaintiff was suffering at the time from rheumatism, and carried a cane, but the finding of the lower court that plaintiff's injuries are the result of an accident arising out of and in the course of his employment is sustained by the evidence and must be adopted. The accident and resulting injury being shown, the fact that plaintiff may have been suffering from disease at the time which may have contributed in some degree to cause the accident is not material. The labor commissioner and district court found that the plaintiff's injuries rendered the plaintiff totally and permanently disabled and allowed compensation at $15 a week for 300 weeks and $12 a week during the remainder of plaintiff's life. Plaintiff was earning $5.50 a day for 10 hours' work, and was paid by the state of Nebraska the sum of $33 for the six days he had been employed; and but for the accident plaintiff's employment would have continued with the other carpenters until the completion of the kitchens a few days later.

Three propositions are presented by the state as reasons for reversal of the judgment:

1. It is contended that Morgan was not an employee of the state of Nebraska. The statute defines such employee as: "Every person in the service of the state or any governmental agency created by it, under any appointment or contract of hire, express or implied, oral or written." Comp. St. 1922, sec. 3038, subd. 1. The argument here is that the Nebraska National Guard is a part of the army of the

United States under 41 U. S. St. at Large, ch. 227, sec. 1, p. 759, providing: "That the army of the United States shall consist of the regular army, the National Guard while in service of the United States," etc. Note that the National Guard is a part of the army of the United States only while in its service; and is not a governmental agency of the state. Section 3300, Comp. St. 1922, provides, however: "The active militia shall consist of the organized and uniformed military forces of the state, which shall be known as the 'Nebraska National Guard.' " Section 3302 provides that the governor shall be the commander in chief. Section 3305 vests control in the adjutant general subordinate only to the governor. Section 3340 requires that the Nebraska National Guard shall encamp for instruction not less than five days annually at such time and place as may be ordered by the commander in chief. Section 3370 authorizes the adjutant general to employ such help as may be necessary and pay for the same out of state funds provided by the legislature, and the expense of constructing these kitchens was so paid.

We are clearly of the opinion that, in the preparation for and holding of the annual encampment, the Nebraska National Guard was a governmental agency of the state within the meaning of section 3038, subd. 1, and that plaintiff was an employee thereof at the time of the accident. While the Nebraska National Guard is subject to the call of the federal government and thereupon becomes a part of the national army, until so called it is essentially a state institution, subject to the call of the governor as commander in chief for military service within the state in time of war, invasions, riots, rebellion, insurrection, or reasonable apprehension thereof (Comp. St. 1922, sec. 3322), and is a state governmental agency.

2. It is next contended that Morgan's employment was merely casual, and not in the usual course of the business, profession or occupation of the National Guard. Section 3038, subd. 3, of the statutes is as follows: "It (employee) shall not be construed to include any person whose employ-

ment is casual, and which is not in the usual course of the trade, business, profession or occupation of his employer. The term 'casual' shall be construed to mean 'occasional; coming at certain times without regularity, in distinction from stated or regular.' " To exclude plaintiff from compensation under subdivision 3, his employment must have been both casual and not in the usual course of the business, profession or occupation of the National Guard. It would seem to require no argument to support the proposition that the National Guard has no trade, business, profession or occupation within the meaning of those terms as used in the statute, as they have reference to industrial concerns, and the theory of employees' compensation acts is that the losses occasioned employees through accident shall be charged to the industry the prosecution of which is the occasion of the service. But it is not illogical to say that the holding of an encampment required by law is a part of the business or occupation of the National Guard; and the preparation of the ground in the interest of the comfort and health of the militia while performing their duties is a proper and necessary work connected therewith. Aside from this, however, we think that under subdivision 1, above quoted, every person in the service of the state, regardless of the character of the service rendered, is an employee, unless he comes within the exceptions specially provided in the act, which is not claimed here. The employment of Morgan was not casual, because it was necessarily connected with the proper performance of the duties imposed upon the National Guard. The shortness of time of his actual engagement upon the work is not controlling; his term of service was indefinite, was ended only by the accident, and in this situation, so far as this point is concerned, he would have been entitled to compensation if the accident had happened the first day or within a few hours of the commencement of his employment. See *Nedela v. Mares Auto Co.*, 106 Neb. 883.

3. Lastly, it is contended that the evidence is insufficient to sustain the finding that the applicant's injuries resulted

in total disability, and that the judgment is excessive, the claim being that, if the claimant is entitled to any compensation, he is restricted to that allowed for the total loss of the use of one leg, which would be $15 a week for a period of 215 weeks under subdivision 3, sec. 3044. The argument is that, inasmuch as the injury was to the leg only, claimant is not entitled to greater compensation than he would have been if the leg had been amputated. We cannot adopt this conclusion. While the only direct result was a fracture of the surgical neck of the femur, the evidence establishes the facts that the injury left broken ends of bone in the hip of the claimant resulting in a malplacement of the hip bone against the pelvic bone, causing irritation of the nerves coming into the hip and affecting the whole physical and nervous system in such manner as to totally disable the claimant from doing any work. The district court found that the plaintiff was suffering from total disability, and such finding is amply sustained by the evidence.

We find no error in the record, and the judgment is

AFFIRMED.

Note—See Workmen's Compensation Acts, p. 48, sec. 39; p. 51, sec. 43; p. 115, sec. 114.