LAUREL E. GIBSON, as Administrator, etc., of FRANK P. GIBSON, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 23796.)

Court of Claims, April 18, 1940.

*Byrne, Jeram & Casey* [*Horace E. Casey* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Joseph I. Butler, Assistant Attorney-General*, of counsel], for the defendant.

MURPHY, J.   By chapter 797 of the Laws of 1934 jurisdiction was conferred upon this court to hear, audit and determine the claim of the claimant administrator to recover damages for personal

injuries sustained by his decedent on February 18, 1932, that resulted in his death.

The act is one known generally as an enabling act and it provides: " If the court finds that the injuries which resulted in the death of the said Frank P. Gibson, as aforesaid, were received by reason of the negligence of the State, its officers and agents, in any manner, and that at the same time the deceased was free from negligence contributing to the injuries, damages therefor shall constitute a legal and valid claim against the State and the State shall be deemed liable therefor, and the court may award to and render judgment for the claimant against the State in such sum as in its judgment will properly compensate the claimant for the damages sustained."

The death of the decedent resulted from a collision between a Ford automobile in which he rode as a passenger and the rearmost truck in a convoy of United States army trucks that were being conveyed from the Erie Ordnance Depot at La Garne, Ohio, to the 106th Field Artillery at Buffalo, N. Y.

In charge of a special detail of National Guardsmen the convoy, consisting of thirty trucks, divided into three separate, equal sections, at about one o'clock P. M. February 16, 1932, left the Erie Ordnance Depot; it traveled easterly through the State of Ohio on Ohio State Route No. 101. On the way more or less difficulty was experienced with several of the trucks in the convoy and, because of some difficulty that developed with one in the second section, the convoy was halted at a point or place on Route No. 101 described as " Mitchell Honey Farm " and about one mile west of the village of Castalia, Ohio. It was some time after sunset when the convoy halted, the sun had set at six-nine o'clock P. M. By order or regulation the convoy traveled in unison and trouble in any unit resulted in halting the entire convoy. The truck with which the Ford automobile collided was the last truck in the third section. When the convoy was halted six units of the third section were parked at the Mitchell filling station and the remaining four units of the section were parked along the south side of the highway. They were parked with the right wheels off and beyond the traveled portion of the highway; the left wheels and part of the bodies of the trucks were on the pavement and within the east traffic lane of the highway. None of the trucks in the section was equipped with headlights or tail-lights, and the last truck of the section, the one with which the Ford automobile came into collision, was wholly without headlights or tail-lights.

At Rural Free Delivery 4, Clyde, on Route No. 101 in Ohio, at about six-thirty o'clock P. M. on February 18, 1932, decedent became a passenger in the Ford automobile that came into collision with

the last truck of the convoy. Rural Free Delivery 4 is upward of fourteen miles west of the place of the collision. The Ford automobile was owned and operated by Harold E. Hughes. He and the decedent were going to the village of Castalia and they traveled easterly on Route 101. Hughes ran and operated the automobile at the rate of about thirty miles an hour and traveling at such rate of speed, at about seven o'clock P. M. they reached the place on Route 101 where the convoy of trucks was parked and there came into collision with the rearmost truck in the third section of the convoy.

The personal injuries sustained by the decedent as a result of the collision caused his immediate death.

The charges of negligence against the State are, stopping and parking the trucks on part of the traveled portion of the highway; its failure to provide lights on the trucks as required by the Ohio statute (Ohio Gen. Code [1926], 12614–3) and failure to give proper or sufficient notice or warning of the presence of the trucks.

The State, conceding the presence of the trucks on part of the traveled portion of the highway and the absence of lights, urges that it should be absolved from liability because a flashlight was used by which it is claimed adequate notice and warning of the presence of the trucks was given, and further it urges that the death of the decedent was due to the negligence of Hughes, the owner and operator of the automobile, whose negligence may be imputed to the deceased.

The presence of the trucks moving or standing on the highway after dark without lights was a statutory violation from which would follow a presumption of negligence. (*Curtis* v. *Hubbel*, 42 Ohio App. 520; 182 N. E. 589; *Coe* v. *City of New York*, 238 App. Div. 483; *Stern* v. *Great Island Corp.*, 250 id. 115.)

The State has substituted the flashlight for the statutory requirement and from this substitution two questions flow: the nature of the means substituted and the manner of its use.

It cannot be successfully disputed that when the substitute was employed, the burden was upon the State to show that the substitute was substantially as efficient as the means required by the statute and that it was used efficiently, and failing to establish either fact would be failure to meet and overcome the presumption of negligence that arose from the failure to comply with the statute.

Doubtless the flashlight gave some notice, but the pertinent question is what did its use convey to the mind of the decedent. It cannot reasonably be said that it conveyed the same information as a tail-light and that is the pivotal point when the question of the substituted for the required is considered.

The manner in which the flashlight was used is described by the witnesses Zeigler and Chaplinski. Zeigler testified, " It was very dark and the beam you could hardly see." Chaplinski testified, " I was waving my arms and flashing the light on the road," and further he testified that the distance west of the standing truck that he was able to travel from the time he saw the automobile coming east and toward him and the time it passed him was about seventy-five feet.

Two elements of negligence appear present, the truck on the traveled portion of the highway and the absence of lights in violation of the statute.

The question has been asked what more could the State do in the circumstances. The present and ready answer is move the truck from the traveled portion of the road or give more effective notice of its presence.

The negligence of Hughes, the owner and operator of the automobile, cannot be imputed to the deceased. The deceased rode as a passenger, an invitee, he had no control over the automobile, and under the settled law of the State the negligence of the owner or operator of an automobile in such situation is not imputable to his passenger or an invitee. (*Blake* v. *Brown,* 180 N. Y. Supp. 441.)

That the negligence of Hughes co-operated to produce the death of claimant's decedent will not excuse the State. A definitely settled rule is that where the approximate cause of any injury is the concurring wrongful act or omission of two or more persons acting independently, both are liable and the degree of culpability is immaterial. (*Forte* v. *City of Albany,* 279 N. Y. 416, 422; *Carr* v. *St. Louis Auto Supply Co.,* 293 Mo. 562; 239 S. W. 827; *Sweet* v. *Perkins,* 196 N. Y. 482; *De Haen* v. *Rockwood Sprinkler Co.,* 258 id. 250.)

The status of the detail of the guardsmen in charge of the convoy has been brought into question by the State and the claim is made that the guardsmen were acting in Federal service and not in State service. This question was decided adversely to the claim of the State in *Matter of Bianco* v. *Austin* (204 App. Div. 34) and the court in its opinion in that case said (p. 36): " the National Guard is only a potential part of the United States Army and does not in fact become a part thereof until Congress has made the requisite declaration of the existence of an emergency."

To the same effect is *Alabama G. S. R. R. Co.* v. *United States* (49 Ct. Cl. 522); *Bush* v. *United States* (52 id. 199); *Louisville & N. R. R. Co.* v. *United States* (Id. 259); *Nebraska Nat. Guard* v. *Morgan* (112 Neb. 432; 199 N. W. 557); *State* v. *Industrial Comm.* (186 Wis. 1; 104 N. W. 1009); *Baker* v. *State* (200 N. C. 232; 156 S. E. 917).

Finally, and to a proper disposition of this claim, a consideration of the language of the enabling act under which the claim is made is necessary. The act provides the basis upon which liability will attach and the provision of the act in this respect is "If the Court finds that the injuries which resulted in the death of the said Frank P. Gibson, as aforesaid, were received by reason of the negligence of the State, its officers and agents, in any manner, and that at the same time the deceased was free from negligence contributing to the injuries, damages therefor shall constitute a legal and valid claim against the State and the State shall be deemed liable therefor."

The conclusion is reached that the proof establishes the negligence of the State and freedom of claimant's decedent from contributory negligence and the claimant administrator is entitled to an award in compensation for the loss and damages resulting from the death of his decedent.

GIBBS, J., concurs; GREENBERG, J., dissents.

GREENBERG, J. (dissenting). Upon the testimony of the witnesses and all of the surrounding circumstances, the court should have found that the operator of the automobile in which the deceased was riding should have seen the light from the flashlight waved by Sergeant Chaplinski, and in the exercise of reasonable care should have and could have avoided running into and colliding with the parked truck, and that the failure to provide lights on the rear of the last truck into which the automobile in which claimant was riding had collided, was not the cause of the accident.

It is well settled that when an ordinance or statute for the protection or benefit of individuals prohibits the doing of acts or imposes a specific duty, the neglect to obey the prohibition or to perform the duty is some evidence of negligence to be considered in an action brought by one for whose protection the statute was enacted, to recover for any injuries of the character which it was designed to prevent, proximately produced by such disobedience or neglect. (*Carlock* v. *Westchester Lighting Co.*, 268 N. Y. 345, 349.)

There must be causal connection between the neglect or failure to have the rear light on the truck in compliance with the statute, and the happening of the accident. The absence of a rear light on the parked truck, in violation of a statute, was some evidence of negligence; it was not conclusive; it is only *prima facie* sufficient, of negligence contributing to the result of the accident.

Under the circumstances what more could any reasonable person have done than to signal approaching automobiles with a flashlight as was done by Sergeant Chaplinski? The rear light on the truck could have served no other purpose than did the light from

the flashlight. In fact, the moving flashlight, in all probability, was a better warning than a stationary light hanging on the rear of the truck. In the case of *Martin* v. *Herzog* (228 N. Y. 164, 170) Judge CARDOZO, writing for the court, said: " If nothing else is shown to break the connection, we have a case, *prima facie* sufficient, of negligence contributing to the result. There may indeed be times when the lights on a highway are so many and so bright that lights on a wagon are superfluous. If that is so, it is for the offender to go forward with the evidence, and prove the illumination as a kind of substituted performance." The State did go forward with such evidence and proved that the waving of the flashlight by Sergeant Chaplinski was a kind of substituted performance and in compliance with the statute respecting lights on the rear of the parked truck. The testimony of the witnesses on that subject is of such probative force as to overcome any finding that the failure to provide the rear light on the truck was the proximate cause of the accident.

" We must be on our guard, however, against confusing the question of negligence with that of the causal connection between the negligence and the injury. A defendant who travels without lights is not to pay damages for his fault unless the absence of lights is the cause of the disaster. * * * ' Proof of negligence in the air, so to speak, will not do.' (Pollock Torts [10th ed], p. 472)." (*Martin* v. *Herzog, supra,* p. 170.)

Accordingly I dissent and vote for a dismissal of the claim herein.