Raymond E. LEDERHOUSE, Plaintiff,

v.

UNITED STATES of America and Donald Truex, Defendants.

Ralph COURTNEY and Mildred Courtney, Plaintiffs,

v.

UNITED STATES of America and Donald Truex, Defendants.

Joseph KESSLER and Edith Kessler, Plaintiffs,

v.

UNITED STATES of America and Donald Truex, Defendants.

Civ. Nos. 5705–5707.

United States District Court
W. D. New York.

Nov. 20, 1954.

On Further Consideration
Nov. 24, 1954.

On Reargument Dec. 30, 1954.

Robert F. Hille, Niagara Falls, N. Y., for plaintiff Lederhouse.

Phelps, Gray & Mansour, Niagara Falls, N. Y., for plaintiffs Courtney and Kessler, Salem G. Mansour, Niagara Falls, N. Y., of counsel.

John O. Henderson, U. S. Atty., Buffalo, N. Y., for defendant United States of America, Alexander C. Cordes, Asst. U. S. Atty., Buffalo, N. Y., of counsel.

KNIGHT, Chief Judge.

These three negligence actions brought under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., were tried together, by consent, to the Court without a jury.

Only the essential facts will be stated. The actions arose by reason of a collision on August 3, 1951, between the automobile owned by Raymond E. Lederhouse and then being operated by his wife Edith L. Lederhouse, going south on Route 5 (Main Street) with a tank retriever owned by the United States, properly in the possession of the New York National Guard and being driven by Donald Truex, going east on Route 5 at the intersection with Route 18–B (Union Road). It was during the daytime. There was a signal light at the intersection. The signal light was green in favor of the plaintiffs at the time of the collision. Truex was a civilian employee of the National Guard and not an enlisted member. It appears that Truex was employed as a mechanic of the 127th Tank Battalion, which Battalion was not in the active military service of the United States; that Truex received his salary by check issued to him by the United States.

Two questions are presented (1) Do the facts establish negligence by Truex, the driver of the tank retriever, causing injury to the plaintiffs who must establish freedom from contributory negligence, and (2) Was Truex, the driver of the tank retriever, an employee of the defendant United States of America within the meaning of the Federal Tort Claims Act?

Disposition of the second question would seem to be of primary importance and will be given consideration to determine the propriety of the United States of America as a party defendant. The Government takes the position that Truex was not an employee of the United States within the meaning of the Federal Tort Claims Act. In construing Tort Claims Act, which relinquishes sovereign immunity from suit, there should be a narrow construction favorable to the sovereign. Kendrick v. United States, D.C., 82 F.Supp. 430; United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598.

The United States Constitution, Art. I, Sec. 8, made provision for the calling of the State militias into Federal service, and reserved to the States the appointment of officers and the training of the militia. The whole government of the militia remained with the States, except when employed in the service of the United States. United States ex rel. Gillett v. Dern, 64 App.D.C. 81, 74 F.2d 485. By the National Defense Act of 1916, 39 Stat. 197, 32 U.S.C.A. § 1 et seq., the President was invested with power to *call* the "Guard" into active Federal service pursuant to constitutional provision and in addition to *order* the federally recognized National Guard, as a reserve component of the National forces, into active federal service. 32 U.S.C.A. § 81. The only effective control exercised by the Government and the regular armed forces relative to organizing, equipping, training and policies of the National Guard of any of the States comes from the control of funds which may be granted to or withheld from the National Guard units pursuant to granting or withdrawing federal recognition. To obtain federal recognition, certain conditions and requirements must be met before application by the National Guard unit will be granted. The application is the voluntary act of

the unit and cannot be required or enforced. The penalty is the loss of federal aid which includes funds and equipment.

■■ While Truex was not an enlisted member of the National Guard, as a civilian employee he would be considered to be in the military service of the State. New York Military Law, McK. Consol.Laws, c. 36, §§ 1 and 19. And he should be so treated. It appears to be admitted that the National Guard Unit was not in the active military service of the United States at the time of the collision. Until the unit has been called into active duty, there can be no liability of the federal government for the conduct of the members of the National Guard. McCranie v. United States, 5 Cir., 199 F.2d 581, certiorari denied 345 U.S. 922, 73 S.Ct. 780, 97 L.Ed. 1354; Dover v. United States, 5 Cir., 192 F.2d 431; Williams v. United States, 10 Cir., 189 F.2d 607; United States ex rel. Gillett v. Dern, 64 App.D.C. 81, 74 F.2d 485; Satcher v. United States, D.C., 101 F.Supp. 919; Mackay v. United States, D.C., 88 F. Supp. 696; Glasgow v. United States, D. C., 95 F.Supp. 213; Gibson v. State, 173 Misc. 893, 19 N.Y.S.2d 405; Bianco v. Austin, 204 App.Div. 34, 197 N.Y.S. 328; Spence v. State, 159 Misc. 797, 288 N.Y.S. 1009.

The Court said in Dicicco v. State of New York, 152 Misc. 541, 273 N.Y.S. 937, 939:

> "The mere fact that the United States government supplied the money and the equipment to carry on the training program did not take the enlisted guardsmen out of the control of the officers of the National Guard or make them any less agents of the state of New York."

In Fries v. United States, 6 Cir., 170 F.2d 726, the Court held that a negligent chauffeur occupying the status of a servant lent by the United States to a City and County Board of Health for the operation of an automobile owned by the United States Public Health Service, was not operating it for the United States within the meaning of the Federal Tort Claims Act.

■ Plaintiffs rely principally on three cases: United States v. Holly, 10 Cir., 192 F.2d 221; United States v. Duncan, 5 Cir., 197 F.2d 233, and Elmo v. United States, 5 Cir., 197 F.2d 230. Each of those cases refer to a "unit caretaker" as being an employee of the United States within the meaning of the Federal Tort Claims Act. None of the cases involve the militia of the State of New York or the New York Military Law. Perhaps the Holly, Duncan and Elmo cases might be sustained at common law, but, when the statutory laws of the State and the Federal Governments are applied to the case at bar, it must be determined that Truex was not an employee of the defendant United States of America.

As to the defendant Truex, he was not served with process in these three actions, nor has he appeared. His status as a defendant is not considered.

Defendant United States of America is entitled to judgment of no cause of action against the several plaintiffs. Judgment may be entered accordingly.

On Further Consideration

The government has advised that it does not desire to file a reply brief.

I have examined plaintiffs' reply brief in the above actions handed me November 22, 1954, and find nothing which had not previously been considered. The only new citations given are (1) The Governor's Veto message dated April 2, 1953, with respect to certain bills to confer jurisdiction on the Court of Claims to entertain claims against the state of persons involved in motor vehicle accidents with military vehicles operated by federally paid employees of the New York National Guard; and (2) an opinion by the New York State Attorney General, 1945, at page 83, which relates to the position of Federal caretaker.

As to the Governor's Veto message, it is apparent that he was unwilling to release the sovereign immunity from suit, and finds comfort in the Holly, Duncan and Elmo cases for his veto message, without closely considering their application to the case at bar.

I must adhere to my opinion dated November 20, 1954.

## On Re-Argument

Plaintiffs have now moved for re-argument and reconsideration "upon the pleadings and upon all the proceedings, testimony and evidence heretofore presented to the Court," the opinion filed November 20, 1954 and the opinion on further consideration filed November 24, 1954, together with the affidavit of Salem G. Mansour, plaintiffs' counsel, verified November 26, 1954 (1) for re-argument and reconsideration of the issues of the status of Donald Truex as an employee of defendant and for judgment in favor of plaintiffs, or (2) granting leave to reopen the trial of the actions for the purpose of presenting evidence to establish that the provisions of the New York State Military Law are not applicable to Donald Truex, a federally paid employee.

The motion was returnable December 6, 1954, at which time oral arguments were heard and plaintiffs' counsel submitted a memorandum in support of the motion. The Government was granted leave to file its brief on or before December 27, 1954, and has complied.

▉ That part of the motion denominated "(2)" is denied. The trial should not be re-opened for additional testimony to show the applicability of the New York Military Law, McK.Consol. Laws, c. 36, 1 and 19, to various civilians other than Truex. The proof would not assist the Court. There is nothing in sections 1 and 19 which distinguishes between the types of civilian personnel and nothing indicates an intention to restrict their scope to one class or another of the civilian personnel.

That part of the motion denominated "(1)" is denied. Having previously disposed of this phase of the lawsuit based on the law and facts that strict construction is given to relinquished sovereign immunity; that government of the militia was reserved to the states, except when called into the active military service of the Federal Government; that National Guard units are not compelled to accept federal recognition, but federal recognition is granted with financial aid, upon application by the unit after certain conditions are fulfilled, which would include the hiring of such a person as Truex to care for the property bailed to the National Guard by the Federal Government; that the only control of the Federal Government stems from its power to grant or deny federal recognition; that guardsmen not in the active military service are not federal employees within the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., and that employment status under the Tort Claims Act depends on control of the person rather than the source of his wages.

Had the Congress intended the Government to be liable for the negligence of all persons receiving pay for their services from the Federal Government, it would have made clear that such was the intention.

This Court has earlier determined that defendant is not liable for Truex's negligence. The control of Truex at the time of the accident was in the State. Truex was hired by and was under the control, even to his being discharged, by State officers; his pay was fixed by State officers; he was trained and directed by State officers; he was repairing property whose maintenance was the State's responsibility and over which the Federal Government had no control before, at the time of or after the accident. Under the doctrine of *respondeat superior*, the defendant would not be liable to plaintiffs inasmuch as the State had complete and independent control and direction of Truex at the time of the accident.

The construction given in the affidavit upon which the present motion is based in respect to the opinions filed November 20 and 24, 1954, should now be set aright. Plaintiffs' counsel submits that the Court's determination "overlooked completely" the application of the provisions of sections 1 and 19 of the New York Military Law. Their citation in

the prior opinion would indicate his error.

Article XII of the New York State Constitution and New York Civil Service Law, McK.Consol.Laws, c. 7, § 2, subd. 3, have also been called to the Court's attention. We read from section 1 of the Constitution, "All able-bodied male citizens of the United States between the ages of eighteen and forty-five, who are residents of the state * * * shall constitute the militia * * *." And from the New York Military Law, § 2 (not cited) we read, "The militia of the state shall be divided into the organized militia, * * * and the unorganized militia. * * * The unorganized militia shall consist of all able-bodied male residents of the state between the ages of seventeen and forty-five who are not serving in any force of the organized militia * * *." The Civil Service Law, § 2, subd. 3, makes specific exception from its benefits of "such offices and positions in the militia and the military departments as are or may be created under the provisions of article twelve of the constitution." All of these citations, including the New York Military Law, and more, were carefully examined and considered before the filing of the opinion of November 20, 1954. Regardless of these citations and quotations, together with the New York Military Law, §§ 1 and 19, and the emphasis given them, they are not alone relied upon for the determination, but, with all of the facts, they do give it support.

This Court still retains its previous conviction that the United States of America is entitled to judgment of no cause of action against the several plaintiffs.

Counsel have shown much diligence and industry in the several briefs which have been submitted to and given this Court a great deal of assistance in the disposition of these suits.

Let judgment be entered in accordance herewith.