TRAVELERS INSURANCE COMPANY ET AL., APPELLEES, V. HARRY C. OHLER, APPELLANT.

FILED NOVEMBER 14, 1929. No. 27177.

*Kinsinger & Ogden,* for appellant.

*Hall, Cline & Williams, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK, District Judge.

GOOD, J.

This action arises under the workmen's compensation law. Appellant Ohler was an employee of the Patriot Manufacturing Company. The Travelers Insurance Company was the compensation insurance carrier for the employer.

To defeat the claim for compensation it was alleged in the district court: (1) That the disabilities of appellant were not caused nor contributed to by the accident; (2) that no notice of claim for compensation was given within six months from the date of injury; and (3) that no action was commenced by filing a claim before the compensation commissioner until more than a year had elapsed from the date of the accident. The district court sustained the contentions of appellees and denied compensation. Ohler has appealed.

On October 3, 1926, while appellant was in the performance of his duties as an employee of the Patriot Manufacturing Company, he received an electric shock. He received treatment on two occasions shortly thereafter from his employer's physician, the bill for which was paid by the employer or the insurance company. Apparently, appellant did not consider the injury very serious at the time, but continued his work, with slight interruptions, until October 29, 1927, when he voluntarily quit work because of his alleged incapacity to perform his duties.

Very shortly after the accident appellant suffered a loss of appetite, loss in weight, and severe and continuous headaches; later suffered from sleeplessness; was nervous and incapable of concentrating his mind upon his work or upon any given subject; lost interest in his work; became irritable, at times dizzy, and it was this condition which caused him to cease work on the 29th of October, 1927. It is his contention that this condition was the direct result of the electric shock.

The evidence, as to whether his condition was caused by the electric shock or from some other unknown cause, is in direct conflict. A number of eminent physicians, skilled in nervous and mental disorders, were called to testify for each of the parties. Those called by appellant included physicians who had treated him from time to time from the date of the accident up to the trial, a period of more than two and one-half years; while the two physicians called by the appellees had never treated him, and their opinions were based upon an examination made only a few days before the trial of the cause in June, 1929. One of these two physicians unqualifiedly stated that the injury or the accident was not the cause of his present disability. This physician, as a witness, however, evinced a very strong partisanship, and was evasive in his cross-examination to such an extent that the weight of his testimony is very greatly affected. The other of the two physicians called by appellees expressed the opinion that appellant was suffering from a nervous breakdown, and

that the cause of it was overwork, but on cross-examination admitted that the electric shock had aggravated and accelerated the nervous breakdown; while the testimony of the several doctors, four or five in number, who had treated and examined appellant and had a more intimate knowledge of his condition over a greatly extended period of observation gave it as their unqualified opinion that his present disability was the direct result of the electric shock. It is true that the physicians testifying for appellant do not agree as to the exact nature or name of his injury. Some diagnose it as cerebral edema and others as multiple sclerosis, but, in any event, all of them agree that he is, practically, totally disabled from performing his accustomed duties, and that his condition was caused by the electric shock.

The rule has obtained in this jurisdiction that the findings of the trial court will not be disturbed in compensation cases if supported by competent evidence. *City of Fremont v. Lea*, 115 Neb. 565; *Bauer v. Anderson*, 114 Neb. 326; *Young v. Johnson & Blind*, 113 Neb. 149. Counsel for appellant, however, call attention to section 3060, Comp. St. 1922, as amended by chapter 81, Laws 1929, which, in part, provides: "If either party at interest is dissatisfied with the award of the compensation commissioner, then the matter may be submitted to the district court, * * *, which court shall have authority to hear and determine the cause as in equity when the same for all purposes shall be tried as one in equity, and if an appeal is had to the supreme court, the same shall be considered *de novo*." Counsel contend that this statute is applicable to the case here.

The record discloses that the judgment in this case was rendered on the 11th of July, 1929, while chapter 81, Laws 1929, did not become a law until the 24th day of July, 1929. It is a general rule that statutes will act prospectively and not retrospectively, unless a contrary intention is clearly disclosed. *State v. Federated Merchants Mutual Ins. Co.*, 117 Neb. 98, and cases there cited. It may be observed

that there is nothing in said chapter 81 indicating an intent that it should operate other than prospectively. Counsel for appellant, however, seem to contend that, if the appeal is taken subsequent to the time when the act becomes a law, it is applicable thereto. We do not think that this contention can be sustained, as applied to the instant case and under the particular statute, for the following reasons:

A legislative act will not be permitted, even if an attempt so to do is disclosed, to operate retrospectively where it will have the effect to invalidate or impair the obligation of contracts or interfere with vested rights. 2 Lewis' Sutherland, Statutory Construction (2d ed.) sec. 642; *United States v. Jackson*, 143 Fed. 783; *Hoyt Metal Co. v. Atwood*, 289 Fed. 453; *Spitzer v. Healy*, 218 N. Y. 737.

In *Davis v. Robinson*, 200 Ia. 840, it was said: "The courts of this country with practical unanimity have always held that the time allowed for an appeal cannot be reduced by legislative enactment after judgment." In *Wilcox v. Saunders*, 4 Neb. 569, 573, relating to the right of appeal by statute, it was said: "In the interpretation of statutes, it is a familiar doctrine that they can have no retrospective operation beyond the time of their commencement, unless so declared by express words or positive enactment, and in such case they will be considered as inoperative and void, if they affect or change vested rights." In 6 R. C. L. 319, sec. 307, it is said: "A judgment is such a vested right of property that the legislature cannot, by a retroactive law, either destroy or diminish its value in any respect." The rule above quoted was announced in *Hoyt Metal Co. v. Atwood, supra,* and numerous cases are therein cited as holding to the same effect.

It may be conceded that, ordinarily, the rules of court procedure alone may at any time be changed by legislative enactment, but if a legislative enactment does, in fact, impair or affect a vested right it is unenforceable or inapplicable as against the enforcement of rights so impaired. What belongs merely to the remedy may be altered,

provided that the alteration does not impair the obligation of the contract or interfere with the vested right. If it does the latter, then it is invalid and contrary to the Fourteenth Amendment of the federal Constitution. *Hoyt Metal Co: v. Atwood, supra; Tennessee v. Sneed,* 96 U S. 69, 24 L. Ed. 610; *McGahey v. Virginia,* 135 U. S. 662, 34 L. Ed. 304.

When the judgment was entered in the district court the parties had vested rights, and one of these rights was that this judgment could only be overturned, on appeal, on a question of fact by the rule then applicable thereto. We are constrained to hold that section 3060, Comp. St. 1922, as amended, does not require the trial of compensation cases in this court *de novo,* except in cases where the judgment was rendered after chapter 81, Laws 1929, became a law.

We are required, therefore, to determine whether the finding of the trial court is supported by sufficient competent testimony, or whether it is clearly wrong. There is no conflict in the record that appellant suffered an electric shock, nor of the fact that thereafter he became afflicted in the manner above indicated, and that he is now practically disabled from performing his ordinary duties. The only conflict is as to whether that condition is the result of the electric shock. Upon a consideration of the entire record, we think that the great weight of the testimony indicates very clearly that appellant's disability is a result of the electric shock which he received in October, 1926. Indeed, one of the experts called by appellees admitted that his condition was in part due to the electric shock. An examination of the entire record convinces us that the finding of the trial court is not sustained by sufficient evidence and is so contrary to the weight of evidence as to be clearly wrong.

Having determined that appellant has sustained a compensable injury, we are now required to determine whether he shall be deprived of compensation because of his failure to give notice of claim and commence his action within the time prescribed by statute.

This court has recognized that the workmen's compensation law was framed for the purpose of requiring industries to bear a part of the loss occasioned to workmen, engaged therein, becoming disabled while employed in the industry, when such disability arises out of and in the course of employment. It has been the declared policy of this court not to deny its benefit by resorting to strained or technical construction, but to give to its provisions a liberal construction so as to effectuate its general purpose. *Parson v. Murphy,* 101 Neb. 542; *Selders v. Cornhusker Oil Co.,* 111 Neb. 300. Applying these principles in the case last cited, this court held: "A latent accidental injury to a workman, seeming at first to be trifling, but subsequently resulting in disability, may be found to occur when discovered by means of X-rays, within the meaning of the workmen's compensation law, providing that no proceeding for compensation shall be maintained unless the claim therefor is made within six months from the occurrence of the injury." In that case the injury was latent, the claim was not filed within six months, and it was held that the injured employee was not thereby denied compensation.

Again, in *McGuire v. Phelan-Shirley Co.,* 111 Neb. 609, the same rule was applied, and it was therein determined that an injured workman, who had not given notice of his claim within six months and had not filed his claim within the one year prescribed by the statute, was not thereby deprived of the right to receive compensation. In *City of Hastings v. Saunders,* 114 Neb. 475, it was held: "Where an employee is accidentally injured, and such injury is latent and of a progressive nature, and subsequently culminates in a compensatory disability, a claim for such injury under our employers' liability act may be filed with the compensation commissioner at any time within one year after the culmination thereof."

The record in the present case discloses that the injury received by appellant was of a latent character and did not develop, so that he was aware of the fact that he had a compensable injury, until long after the time for filing

claim and commencing action, by the strict letter of the statute, had expired. We think the facts presented in this case bring it within the rule announced in the authorities just cited, and that the defense that notice of claim was not given, or the action commenced within the statutory period, is not available to the appellees in this case.

The record shows that at the time of his injury appellant was earning $75 a week. His earning at the present time and since the date is and has been negligible. Under the statute applicable, he is entitled to compensation at the rate of $15 a week for a period of 300 weeks, dating from the 29th day of October, 1927, and $12 a week for the remainder of his life, subject, however, to a modification in the event his disability ceases or is lessened so as to affect the amount of his recovery, as provided by statute.

Appellant is also, as disclosed by the record, entitled to recover for medical care and services the sum of $126, and to an allowance for attorney's fees in the sum of $200.

The judgment of the district court is reversed, and the cause remanded, with directions to enter judgment for appellant in conformity with this opinion.

REVERSED.