JACOB KURTZ, APPELLEE, V. SUNDERLAND BROTHERS COMPANY, APPELLANT.

FILED APRIL 25, 1933. No. 28737.

*Brown, Fitch & West,* for appellant.

*Wear, Garrotto & Boland, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an appeal from a judgment of the district court for Douglas county, wherein the plaintiff was awarded compensation for loss of sight.

The facts involved may be briefly stated as follows: Jacob Kurtz, the plaintiff, was born in 1865, and for many years was janitor in the Sunderland building, Omaha, Nebraska. On September 6, 1928, the electric elevator in said building stopped running, and the plaintiff went to the basement and put in a new fuse, and, in inserting the fuse, a light flashed right in front of, and close to, his eyes. He was able to continue his work in spite of the pain in his eyes. On about the fifth day after he was injured, the manager of the building noticed his sore eyes, and sent him to Dr. Maxwell, who treated him for about a week, and opened two or three blisters, which had formed from the burn, and, while his eyes continued to pain him, he was able to keep on with his work. A short time after this he laid off from work for one week, and with his daughter went to see a doctor up in South Dakota, from which trip he received no benefit, and he began slowly to lose the sight of both eyes. In June, 1929, he was first attended by Dr. Wherry, who told the plaintiff there was a cataract developing in both eyes, and the trouble had advanced further in the left eye. Dr. Wherry also told the plaintiff at that time that eventually he would have to be operated on, and that his trouble would gradually increase. Dr. Wherry finally operated upon the left eye in two stages, by doing a preliminary

operation in April of 1930, and in June of 1930 extracting the cataract lens in the left eye, which had become entirely opaque. This had healed, and in September of 1930 Dr. Wherry fitted glasses to the eye, and after that, as the adjustment process continued, he was compelled to alter the glasses, and gave him his last change of glasses in July of 1931.

Dr. Wherry testified that he last examined the plaintiff's eyes in March, 1932; that his left eye at that time was in very good shape, and that the cataract lens in his right eye was thoroughly thick, and that it was ready to have an operation whenever the plaintiff would make up his mind to have it performed. He further testified that, without the adjusting lens, the plaintiff has little sight, although he was then able to count fingers at four feet away without glasses. With the adjusting lens, he has fairly good sight in his left eye, and, if an operation to remove his right lens would be as successful, it would greatly assist in his breadth of vision, and with both eyes operated on successfully there would be about a 10 per cent. loss of vision, after proper correction with glasses.

From March of 1930 until October of 1930, the plaintiff was unable to do any work, and compensation was paid to him. Exhibit No. 1 is the final report and settlement receipt, which has near the top, in large type, these words: "Do not sign this receipt unless you intend to end payments of compensation and close the case." This exhibit shows: Date of injury, 9-6-'28; disability began 3-12-'30; compensation began 3-12-'30; compensation stopped 10-7-'30; weekly compensation of $13.85 paid to the total amount of $362.08; that the hospital and medical services paid out for plaintiff were $326.70, making a total amount of compensation paid in the case of $688.78, which final settlement was signed by the plaintiff upon October 17, 1930.

After this settlement he resumed his work as janitor, and continued working until in February of 1932, at which time his employment was terminated. Plaintiff com-

menced this action on February 29, 1932, three years, five months and 23 days after the date of the accident, and two years, eight months and 25 days after Dr. Wherry had told him he had cataracts in both eyes, which would develop slowly, exactly as they did.

Upon trial in the district court, it was ordered that plaintiff be paid compensation for 273 6/7 weeks, at $13.85 per week, commencing February 1, 1932, and that thereafter compensation be paid to him at the rate of $9.34 a week for the remainder of his life, together with attorney's fee of $150.

In the assignment of errors, the principal reliance is placed upon the contention that the plaintiff's cause of action is barred by the statute of limitations, and, also, that it is barred by the release signed by the plaintiff on October 17, 1930.

"It has been held many times by this court that failure to file claim, or bring suit within the specified time, does not defeat the right to compensation where the injury is latent, provided the notice is given and the action commenced within the statutory period after the employee has knowledge that compensable injury has resulted." *Astuto v. V. Ray Gould Co.*, 123 Neb. 138. Rosario Astuto had consulted a number of doctors before he found one who discovered what his trouble was, and that it was all a result of the original injury.

In the case of *Collins v. Casualty Reciprocal Exchange*, 123 Neb. 227, there was no indication that the finger would become permanently stiff, and months afterward an infection develop, and it was thought then that the finger would soon return to the normal condition, and neither the plaintiff nor the physician knew, when compensation was paid, that the injury was latent, and that it would later culminate in permanent disability.

In *Selders v. Cornhusker Oil Co.*, 111 Neb. 300, the claim was filed nine months after the accident occurred, and physicians were unable to discover the nature of his disorder until it was finally disclosed by X-rays that a

lumbar vertebra had been fractured, and promptly thereafter the plaintiff applied for compensation.

Considerable discussion is given in the briefs as to whether the removal of a lens of the eye, and its correction with glasses, is the same as if the eye has been entirely taken out. Such an eye is certainly not useless, and a discussion of this point will be found in *Cline v. Studebaker Corporation,* 189 Mich. 514; *Gigleo v. Dorfman & Kimiavsky,* 106 Conn. 401; *McNamara v. McHarg, Barton Co.,* 192 N. Y. Supp. 743; *Globe Cotton Oil Mills v. Industrial Accident Commission,* 64 Cal. App. 307.

In *Clary v. Proudfit Co., ante,* p. 582, it was held that, in the case of a latent accidental injury, which appeared to be trifling at first and noncompensatory, there was not sufficient proof that plaintiff had knowedge of a compensable injury six months before he filed his claim, or that the proceeding was barred by lapse of time, as the plaintiff did not know the cause of his injury until months after it occurred, and he presented his claim within six months thereafter.

In *Montgomery v. Milldale Farm & Live Stock Improvement Co., ante,* p. 347, the accident occurred August 23, 1930, and not until X-ray pictures were taken on August 12, 1931, was the true nature of the injury discovered.

The word "latent" is defined as the time within which a disease is supposed to be in existence without manifesting itself, that is, during which time it lies dormant. In the case at bar, Dr. Wherry knew, and explained to the plaintiff, in June, 1929, the exact situation, in that he told him his eyes had both been injured by the accidental flash close to them on September 6, 1928; that he had a progressive cataract forming in the lenses of both eyes, and that the one in the left eye would be ready for operation first, after which he could be fitted with glasses to restore his vision; that this opacity of the lens was a matter of slow change, and would take months to entirely ripen. Nothing has occurred since that time which

was not clearly diagnosed as the usual and probable course of his trouble by the specialist, Dr. Wherry. It can scarcely be contended that, during all of these years, this trouble was latent, or dormant, in the sense that it had not manifested itself, or had not been discovered; nor can it be claimed that the plaintiff was in entire ignorance of his disability, for all these facts were well known to both Dr. Wherry and the plaintiff.

The law in reference to compensation provides, in section 48-133, Comp. St. 1929, that the notice of injury therein required shall be given within six months after the occurrence of the accident, and section 48-138, Comp. St. 1929, provides that all claim for compensation shall be forever barred unless within one year after the accident a petition shall be filed therefor, and it is further provided that, if payments of compensation have been made in any case, said limitation shall not expire until one year after the time of making the last payment, and, in the case at bar, the last payment was made for the week ending October 7, 1930, after which a final receipt to close the compensation was signed, and this action was not filed until February 29, 1932. *Samland v. Ford Motor Co.*, 123 Neb. 819, discusses these provisions.

We have reached the conclusion, very regretfully, that plaintiff's cause of action was barred by the statute of limitations. The trial court was, therefore, in error in allowing plaintiff compensation in addition to the $688.78 heretofore paid, and it is directed that the judgment be reversed and the case dismissed.

REVERSED.