ROBERT L. DUNLAP, APPELLANT, v. CITY OF OMAHA, APPELLEE.

FILED OCTOBER 23, 1936. No. 29875.

 

*Rosewater, Mecham, Shackelford & Stoehr,* for appellant.

*Seymour L. Smith, Harold C. Linahan* and *William W. Wenstrand, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ.

GOSS, C. J.

Robert L. Dunlap appealed from a judgment of the district court setting aside an award in his favor by the Nebraska workmen's compensation court and dismissing his action.

About May 1, 1922, Robert L. Dunlap, a junior captain in the Omaha fire department, received an injury while on duty attending a fire. From that moment he never did a day's work on the fire department. The injury was caused by an explosion (probably of films) and resulted from inhaling gas, smoke and fire. He was disabled for a considerable time and received from the city his full pay of $165 a month (with $2.50 a month deducted for the pension fund) for a year, at the end of which time he was ordered to report for active duty. Thereupon he filed an application with the city council, requesting that he be placed upon the pension rolls of the city on the ground that he was permanently and totally disabled as a result of the injury received. A hearing was had before the city council and on June 6, 1923, his application was denied. He filed a petition in error in the district court for Douglas county, asking for a mandatory order directing the city council to sustain his application for a pension and to pay the same as provided by law. This petition in error was dismissed by the district court and that matter was ended.

The application for a pension in 1923 appears to have

been heard upon appellant's claim that he could not go back on fire fighting duty because of his inability to endure fire and smoke by reason of their effect upon his pharynx and larynx, or, in ordinary words, the irritation of his throat when exposed to smoke, gas or fire. He claimed a total and permanent disability to act as a fireman from and after May 1, 1923, although, up to the time he applied for the pension, the city had paid him his former salary for a full year after the accidental explosion had injured him. On the theory that he was able at the end of the year to do at least light work, the city refused him a pension, but evidently offered him a position at a station where ordinarily there were only a few calls a year to fight fires. It was proposed that he try out the plan; if it failed the council would reopen the case. He refused the offer and went to California, where he remained for more than eight years before starting proceedings to obtain compensation. After his first two years in California he was gainfully employed for several years (at least up to the time of applying for compensation) at congenial work for which he was qualified and at as good average pay as he received from the city of Omaha when employed in the fire department. But his California work did not require much physical exertion; chiefly it was an executive job.

In July, 1931, appellant was examined in California, and brought this action in the compensation court in Nebraska December 3, 1931, alleging that he was suffering from a fibrous mediastinitis and that his heart had become greatly enlarged as a culmination of his disability received in the Omaha fire of May 1, 1922. He claims that the disability there received was latent and progressive through the intervening eight years after his pay as a fireman ceased and after his pension was refused in 1923; that he first knew of it, or was bound to know of it, in 1931; that the statute of limitations has not run against his claim and that he is entitled to compensation.

The compensation court awarded appellant $15 a week from and after June 1, 1935, for 300 weeks, and $12 a week

thereafter during life. On appeal the district court set aside the award of the compensation court and dismissed the action on the grounds that the findings of fact were not supported by the record, that on or about April 30, 1922, claimant received his compensable injury, consisting of burns on his throat and lungs, was paid his salary for a year from May 1, 1922, was fully aware of his condition at and prior to May 1, 1923, made an application for a pension from the city May 29, 1923, in which he alleged himself to be totally disabled as a result of said injuries, in 1931 discovered he had a disabling affection of the heart which the medical evidence agrees is due to the burns of 1922, and in December, 1931, commenced this action. The court found that the statutes require that such an action must be brought within one year from the date of the injury or within one year from the date of the last payment made on account of the injury, and that May 1, 1923, was the date of the last payment made by the city of Omaha to the claimant.

By written stipulation of the parties, and to save calling additional oral witnesses, the case was tried in the district court March 19, 1936, upon the record and evidence upon which it was tried before the compensation court on October 11, 1935. In that trial was used a transcript of the hearing before the city council June 4 and 5, 1923, when Captain Dunlap's application for a pension was heard by the city council. We have carefully read the proceedings before the city council in the pension hearing. There appears no testimony relating to any heart affection. Several doctors testified, but their evidence was directed to the condition of Captain Dunlap's throat and lungs.

In the proceedings before the compensation commissioner, used on the trial in the district court, Dr. A. S. Pinto, city physician, testified that he had examined the claimant about a year after his injury and "didn't find any heart involvement at that time." The claimant's lungs were affected so that on deep inspiration he had a hacking cough affecting the smaller bronchi. This doctor again examined claimant

in 1934, about a year before the trial. Then his general condition was better, but "he had an enlargement of the left heart. * * * The heart condition developed since that time;" that is, since the doctor's examination in 1923. He testified that the lung condition was more chronic and he was of the opinion that condition had "an effect upon the heart." On cross-examination the doctor testified that, in his opinion, Captain Dunlap was totally disabled from physical labor when he examined him in 1923. It is noted that, when Dr. Pinto was examined in the proceedings to obtain a pension in 1923, he was not asked about Captain Dunlap's heart, nor as to his ability to resume his work.

Dr. William Nance Anderson, of Los Angeles, testified for appellant, by deposition, that he had been practicing in Los Angeles for a little over two years, prior to which he had practiced nineteen years in Omaha. He is a specialist in internal medicine and diagnosis. He was associated with the late Dr. LeRoy Crummer, who was a heart and lung specialist in Omaha, and who also removed to Los Angeles. The first time Dr. Anderson examined Dunlap after he went to Los Angeles was in January, 1931. He then discovered and disclosed to Dunlap that he had "a definite increase in the size of the left side of the heart, the aorta was enlarged beyond his years, there was an increased density of the mediastinum to the right and a sluggishness of activity of the right diaphragm. The above condition, in my opinion, is the final result or culmination of the injury on May 1, 1922." He diagnosed it a fibrous mediastinitis or an increase of fibrous tissue in the structure between the lungs or into the substance of the lungs which covers the area around the heart. This produces scar tissue which hardens the substance around the heart and makes more work for the heart to do in forcing the blood through the tissue which is deformed. The doctor again examined the patient on August 26, 1932, the day the deposition was taken. He found the "total size of the heart was ten per cent. larger than expected." The condition makes the patient short of breath and cuts down his capacity for exertion.

Dr. Anderson had examined Dunlap in Omaha in 1923. He had no record of any enlargement of the heart at that time, but he did then discover "an increase of fibrous tissue in the substance of the lung toward the right diaphragm." He stated that "it takes a certain length of time for fibrous tissue of that sort to progress to a place of contraction and to be of sufficient greatness to eventually demand an increase in the size of the heart."

Captain Dunlap testified that, after he went to California (which probably was late in 1922 or early in 1923, as he testified it was before he applied for a pension in 1923), "Approximately for two years I was in pretty bad condition. I was unable to do anything at all, could not hardly walk." After that "there was some improvement and I had a setback again."

There is other evidence which might be stated, but we have set forth the history of this case so fully, in order to give a picture of the situation of plaintiff, that we forego further reciting of evidence. It shows clearly that Captain Dunlap had a valid compensable claim arising out of the accident on May 1, 1922.

The city recognized that claim by payment of Dunlap's salary in full for a whole year. That payment tolled the statute of limitations for one year, under the terms of the statute. "Where, however, payments of compensation have been made in any case, said limitation (of one year after the accident for filing the petition required by section 48-139, Comp. St. 1929) shall not take effect until the expiration of one year from the time of the making of the last payment." Comp. St. 1929, sec. 48-138. See *Ashton v. Blue River Power Co.*, 117 Neb. 661, 222 N. W. 42.

Appellant cites the following Nebraska cases and argues therefrom that his injury resulting from the accident was latent and progressive and, under these authorities, he was not required to file his petition for compensation until his heart enlargement was disclosed by Dr. Anderson's examinations in January, 1931: *Marler v. Grainger Bros.*, 123 Neb. 517, 243 N. W. 622; *Stone v. Thomson Co.*, 124

Neb. 181, 245 N. W. 600; *Montgomery v. Milldale Farm & Live Stock Improvement Co.*, 124 Neb. 347, 246 N. W. 734; *Travelers Ins. Co. v. Ohler*, 119 Neb. 121, 227 N. W. 449; *City of Hastings v. Saunders*, 114 Neb. 475, 208 N. W. 122; *Astuto v. V. Ray Gould Co.*, 123 Neb. 138, 242 N. W. 375; *McGuire v. Phelan-Shirley Co.*, 111 Neb. 609, 197 N. W. 615; *Selders v. Cornhusker Oil Co.*, 111 Neb. 300, 196 N. W. 316; *Flesch v. Phillips Petroleum Co.*, 124 Neb. 1, 244 N. W. 925; *Collins v. Casualty Reciprocal Exchange*, 123 Neb. 227, 242 N. W. 457.

An examination of these cases will show that in most of them the "accident" seemed trivial at the time it occurred and no compensation was sought at the time, but later it was discovered that the accident had culminated in compensable injuries; in other cases the compensation had been paid until the apparent disability had ceased and compensation had ended, but a latent or progressive disease had developed, clearly traceable to the original accident, upon ascertaining which a new claim was filed. In these situations it has been uniformly held by this court that the time within which some affirmative action must be taken by the employee begins to run at the time when he has notice of the culmination of the injury into one that is compensable.

But, in this case, Dunlap and the city agreed, by the city paying and by him receiving his full salary, that he was totally disabled for at least a year. For that period both waived any notices or action to enforce the compensation statutes. Whether or not the city believed that Dunlap was still entitled to compensation, he believed it as shown by his testimony. First he litigated his right to a pension with its more ample pay than under the compensation statutes. Then, for a year or two more, while in California, he was almost incapacitated. He knew when he applied for a pension that he was entitled to compensation; he knew when, during the first two years in California he was unable to do any work, that he was entitled to compensation; and he knew for all the eight years before his heart enlargement was disclosed to him by Dr. Anderson's ex-

.amination in 1931 that he would have been entitled to compensation all the years since the accident in 1922.

Section 48-138, Comp. St. 1929, says: "In case of personal injury, all claim for compensation shall be forever barred unless, within one year after the accident, the parties shall have agreed upon the compensation payable under this act, or unless, within one year after the accident, one of the parties shall have filed a petition as provided in section 48-139 hereof."

No such petition was filed. If it had been filed and heard, the presumption under the facts is that it would then have been allowed. Whether appellant's condition had remained one of continued compensability for total disability, or would have culminated in the condition in which his doctor now finds him, would have produced no change in his compensation. We do not think the legislature intended the workmen's compensation law to be so interpreted that one clearly compensably injured as the result of an accident may, while fully cognizant of his right to compensation, first seek and obtain his regular pay for a year, then gamble on the fruits of higher pay in another field for eight years, and at the end of that period first seek, under the statute, compensation as for a latent and progressive injury as a result of the same accident for which he was all the while eligible to have claimed compensation if he had made timely application.

We are of the opinion the judgment of the district court is right. It is

AFFIRMED.