STANLEY LIND, APPELLEE, V. NEBRASKA NATIONAL GUARD
ET AL., APPELLANTS.

12 N. W. 2d 652

FILED JANUARY 14, 1944.   No. 31641.

*Walter R. Johnson, Attorney General,* and *Carl H. Peterson,* for appellants.

*Dwight W. Dahlman, Bertrand V. Tibbels* and *Paul E. Haberlan, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an action originally instituted by Stanley Lind,

appellee, in the workmen's compensation court against the Nebraska National Guard and the state of Nebraska for recovery under the workmen's compensation laws for injuries sustained by appellee while he was engaged in line of duty as a regularly enlisted member of the Nebraska National Guard at the National Guard camp at Ashland, Nebraska. An award of compensation was made by the workmen's compensation court in favor of appellee. On appeal to the district court the award was sustained and judgment was entered accordingly. From this judgment the appeal here has been taken.

There is little, if any, dispute about the material facts in the case. Appellee, at the time of the occurrence which is the basis of the action, was a regularly enlisted member of the Nebraska National Guard with the grade of private, first class. His enlistment contract or agreement was entered into by the use of a form provided by the war department of the United States government. By the terms of the enlistment appellee became subject to the provisions of the Constitution of the state of Nebraska (art. IV, sec. 14) pertaining to the Nebraska National Guard, the statutes creating and controlling it (Comp. St. 1929, ch. 55, art. I as amended in art. I, ch. 55, Comp. St. Supp. 1941), and the National Defense act of the United States adopted in 1916 and amendments thereto (32 U. S. C. A. secs. 1 to 194, inclusive).

Under authorization of the secretary of war of the United States the adjutant general of the state of Nebraska, by order of the governor, on June 14, 1939, issued an order for the training of the National Guard unit, of which appellee was a member, at Ashland, Nebraska. The period of training began August 6, 1939, and ended on August 20, 1939. Appellee responded to the call and remained in active service for the entire period. For this service appellee was paid by the United States government at the rate of $1.15 per day. In addition to this amount the National Guard, from legislative appropriation for that purpose, made an allowance to him and all others of $1 per day. This allowance

appears not to have been considered by the adjutant general as pay for service but in the nature of a bonus or deserved gratuity.

On or about August 12, 1939, in line of duty, appellee was ordered to engage in a baseball game, commonly called soft ball. In receiving a thrown ball from another player the ball struck the end of the second finger on appellee's left hand. Pain immediately followed but he finished the game. The following morning he reported on sick call and was sent to the camp hospital where his finger was examined. There having been no X-ray equipment at the camp, he was sent to a physician at Ashland, Nebraska, where X-ray pictures were made. The pictures appear not to have disclosed a fracture. The Ashland physician reported a probable sprain. Treatment for sprain was given. The finger was bandaged with splints. These were changed at the camp but finally removed completely by appellee himself. From that time on appellee suffered disability and impairment in the use of the hand and pain, the exact nature and extent of which is not made clear by the evidence. On December 2, 1939, he was examined by Dr. H. Winnett Orr. X-ray pictures taken by Dr. Orr revealed a fracture. In January, 1940, he called upon the adjutant general, the purpose of which call was to seek compensation from some source for his injury. The source from which he thought he was entitled to compensation is not disclosed and no formal or informal claim was made. It appears however that the adjutant general communicated with the war department concerning the matter. On March 21, 1940, an operation was performed by Dr. Orr. On May 20, 1940, another operation was performed under direction of Dr. Orr.

On these facts the appellants contend that the award and judgment for workmen's compensation cannot be sustained. Three principal grounds on which this contention is based are the following: 1. At the time of the accident appellee was not in the service of the Nebraska National Guard or the state of Nebraska but was in the service of the United States; 2. If at the time he was in the service of the Ne-

braska National Guard or the state of Nebraska he was not an employee within the meaning of the workmen's compensation law; 3. If he was an employee within the meaning of the workmen's compensation law he is barred of an action thereunder for failure to file claim within six months from the date of the accident and for failure to file petition within one year.

The first ground noted is dependent on an interpretation of the acts and doings of the war department in authorizing the call, and the call by the governor through the adjutant general and service contemplated thereunder in the light of the provisions of the National Defense act.

On April 14, 1939, the war department, by and through the chief of the National Guard Bureau, under section 94 of the National Defense act, issued an order designated "Training Authority" for a period of training for the National Guard unit of which appellee was a member. The part of the order which is of importance here is the following: "Under the provisions of section 94, National Defense act, the Secretary of War authorizes field training for the following units of the National Guard as prescribed below: * * * ." The order does not characterize the service either as Nebraska National Guard service or otherwise.

Section 94 of the National Defense act is the following: "Under such regulations as the President may prescribe the Secretary of War is authorized to provide for the participation of the whole or any part of the National Guard in encampments, maneuvers, or other exercises, including outdoor target practice, for field or coast-defense instruction, either independently or in conjunction with any part of the Regular Army, and there may be set aside from the funds appropriated for that purpose and alloted to any State, Territory, or the District of Columbia, such portion of said funds as may be necessary for the payment, subsistence, transportation, and other proper expenses of such portion of the National Guard of such State, Territory, or the District of Columbia as shall participate in such encampments, maneuvers, or other exercises, including out-

door target practice, for field and coast-defense instruction." 32 U. S. C. A. sec. 63.

In the light of the section of the National Defense act quoted and the reference in the order to the provisions of the act it appears that there was but a grant of authority to the state of Nebraska for participation of its National Guard unit in training offered and afforded by the war department. No burden is impressed upon or power granted to the war department in this particular connection beyond provision for training of the National Guard organizations of the states and territories under the auspices and by the use of the federal facilities. The language of the act appears to us to admit of no other interpretation. Our conclusion has been independently arrived at but it is supported by very considerable precedent. *Oregon-Washington R. & N. Co. v. United States,* 60 Ct. Cls. 458; *Illinois Central R. Co. v. United States,* 60 Ct. Cls. 499; *Bianco v. Austin,* 204 App. Div. 34, 197 N. Y. Supp. 328; *Gibson v. State,* 173 Misc. 893, 19 N. Y. Supp. 2d 405; *Baker v. State,* 200 N. Car. 232, 156 S. E. 917; *Andrews v. State,* 53 Ariz. 475, 90 Pac. 2d 995; *State v. Industrial Commission,* 186 Wis. 1, 202 N. W. 191.

It may be said further that the general order of the governor of Nebraska issued by the adjutant general was issued in terms specifically in pursuance of and with reference to the war department order granting authority for training hereinbefore referred to. It must therefore follow that this general order was issued with reference to the purport, effect and limitation of section 94 of the National Defense act.

We hold therefore that the appellee during his period of service was in the service of the state with the Nebraska National Guard.

Having determined that appellee was in the service of the state as a member of the Nebraska National Guard it now becomes necessary to determine whether or not he was an employee within the meaning of the workmen's compensation law.

To be eligible for benefits under the workmen's compensation law appellee must be an employee of an employer or workman within the meaning of the following which is the first sentence of section 48-106, Comp. St. 1929: "The provisions of this act shall apply to the State of Nebraska and every governmental agency created by it, and to every employer in this state employing one or more employees, in the regular trade, business, profession or vocation of such employer."

This court has decided that the Nebraska National Guard is a governmental agency of the state within the meaning of the workmen's compensation law and that an employee in consequence of injuries growing out of an accident arising out of and in the course of his employment is entitled to compensation. *Nebraska National Guard v. Morgan*, 112 Neb. 432, 199 N. W. 557. The question of whether or not an enlistee of the National Guard is an employee within the meaning of the workmen's compensation law of Nebraska is here one of first impression. The opinions of other jurisdictions are divided.

In *Andrews v. State, supra*, it was held that members of the National Guard were employees within the meaning of the workmen's compensation law of that state. Benefits however were denied on the ground that under the workmen's compensation law where injury or death was in consequence of service outside the state, as was true in that case, compensation could not be awarded.

In *Baker v. State, supra*, it was held in the following language that members of the National Guard were employees within the meaning of the workmen's compensation law: "The record shows, in any event, that the plaintiff was voluntarily in the service of the State and subject to its direction and control. This is one of the tests of employment; and under the liberal interpretation given to the Compensation Law we should hesitate to hold that there can be no employment within the meaning of the act unless there happens to exist the technical relation of master and servant."

In *Globe Indemnity Co. v. Forrest*, 165 Va. 267, 182 S. E.

215, and *State v. Industrial Commission, supra,* recoveries were allowed under the workmen's compensation laws of the respective states but from the opinions it would appear that the question of whether or not members of the National Guard were employees was not presented. At least the subject was neither decided nor discussed.

On the other side of the proposition attention is directed first to *Goldstein v. State,* 281 N. Y. 396, 24 N. E. 2d 97. The state of New York had a law similar to our own (Comp. St. 1929, sec. 55-101) making all able-bodied males between the ages of 18 and 45 years members of the state militia. The court in the opinion addressing itself to this subject and others pertinent there as well as here, said:

"In determining whether particular persons or classes are covered it is necessary to consider the statute as a whole and the purpose embodied in its enactment. When so considered it seems to us to be apparent that it was never intended to cover militiamen while engaged in active service. There are many reasons which lead to that conclusion.

"Working men and women, employees of others, under our system of government are free men and women. They have the same standing, rights and privileges possessed by other members of our body politic. They may work or not according to their own free will. If engaged in work they may quit working at any time if they desire without liability therefor unless prevented by the terms of some express contract. They may organize labor unions for the purpose of improving their working conditions. They may engage in strikes against their employers to compel their employers to grant them certain rights or privileges which they deem themselves entitled to. They may even engage in peaceful picketing of their employers' places of business to induce their employers to grant them the rights which they claim.

"Upon the other hand, when a man becomes a member of the State militia he must, when in active service, surrender for the benefit of the State certain of the privileges enjoyed by working men who are employees. Under the Military

Law (Cons. Laws, ch. 36) a member of the militia may be tried for various military offenses, for acts which are not illegal under any other law. He may be tried and punished by a military tribunal and if found guilty may be punished by fines and in certain cases by imprisonment. He is at all times subject to the commands of his superior officers. He cannot quit while in active service without consent of his superiors. Members of the State militia do not become members for the purpose of receiving the small per diem allowances awarded them by the State while they are in active service. 'The militia of the state shall consist of all able-bodied male citizens * * * between the ages of eighteen and forty-five, who are residents of the state * * * ' (subject to certain exemptions). (Military Law, Par. 1.) The Governor has power, in case of necessity, to order into active service of the State any part of the militia that he may deem proper. (Id. Par. 8.) Thus every man who is a resident of the State between the ages of eighteen and forty-five years, subject to certain exceptions, may in case of necessity be required, upon the call of the Governor, to enter the active service of the State as a part of the militia. It seems clear that one who joins the State militia and is engaged in active service therein is in no sense an employee of the State. He is simply performing a duty which he owes to the sovereign State as a resident and citizen. It makes no difference whether he does that voluntarily in time of peace or in response to the call of the Governor in time of trouble."

The supreme court of Illinois had before it this question in *Hays v. Illinois Terminal Transportation Co.*, 363 Ill. 397, 2 N. E. 2d 309. That court in the following words came to the same conclusion as the New York court: "The relation between the State and those who are in the voluntary military service is essentially different from the relation which obtains between master and servant. Military service is based upon the duty which every citizen owes to the sovereign and differs from ordinary employment in this: that the enlisted man cannot terminate his service at will. * * * It thus appears that although an enlistment is a

contract, it is not the usual contract of employment contemplated by the Workmen's Compensation act." From a reading of the entire opinion it may reasonably be said that the court in arriving at its conclusion was influenced by the fact that compensation other than workmen's compensation is allowable to a member of the Illinois National Guard for injury in service and benefits are allowable to dependents for death but clearly the criterion for the determination is the failure to come within the meaning of the term employee as used in the workmen's compensation law.

We are disposed to agree with the conclusion arrived at by the courts of New York and Illinois. We adopt the view that members of the Nebraska National Guard are not employees of the state or any agency created by it within the meaning of the workmen's compensation law but that as members of the National Guard, when on duty, are engaged in the performance of the duty which the citizen owes to the sovereign of which he is a part along with every other citizen.

We think it not out of place to suggest here that the framers of the Constitution recognized the existence of the state militia as a constituent element of sovereignty without in terms creating it. Article XIV of the Nebraska Constitution is the only one pertaining to the militia. It is the following: "The Legislature shall determine what persons shall constitute the militia of the state, and may provide for organizing and disciplining the same." This provision does not create but recognizes the existence of the militia and authorizes legislative provision for its components. It would appear therefore that a militia was constitutionally considered an attribute of sovereignty and that any legislative provision for call of personnel to the militia would be a call to sovereign service rather than to employment by the state or an agency of the state.

If we found that appellee was an employee within the meaning of the workmen's compensation act still it would be necessary to deny a recovery on the ground that his action is barred for the reason that he failed to file claim within the time fixed by statute.

Section 48-133, Comp. St. 1929, as amended by section 21, ch. 57, Laws 1935, contains the following provision with regard to notice of injury and the filing of claim for compensation: "No proceedings for compensation for an injury under this article shall be maintained, unless a notice of the injury shall have been given to the employer as soon as practicable after the happening thereof; and unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same, or in case of death of the employee, or in event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity: * * * ."

Section 48-138, Comp. St. 1929, setting forth the time within which action may be instituted is the following: "In case of personal injury, all claim for compensation shall be forever barred unless, within one year after the accident, the parties shall have agreed upon the compensation payable under this act, or unless, within one year after the accident, one of the parties shall have filed a petition as provided in Section 3680 (48-139) hereof. In case of death, all claims for compensation shall be forever barred unless, within one year after the death, the parties shall have agreed upon the compensation under this act, or unless within one year after death, one of the parties shall have filed a petition as provided in Section 3680 (48-139) hereof. Where, however, payments of compensation have been made in any case, said limitation shall not take effect until the expiration of one year from the time of the making of the last payment. In the event of legal disability of an injured employe, said limitation shall not take effect until the expiration of one year from the time of removal of such legal disability."

As disclosed by the record no formal notice was ever given of the accident and injury and no formal claim for compensation was ever made except the petition filed in the workmen's compensation court. The only notice to appellant of any kind was a call, or perhaps two calls, at the of-

fice of and conference with the adjutant general in January of 1940. The evidence fails to disclose that formal or informal claim was made on that or those occasions. The petition was filed October 7, 1940, almost 14 months after the injury was sustained.

It is the claim of the appellee that the statutory limitations did not apply to him since the injury was latent and its true character was not known until examination by Dr. Orr in the early part of December, 1939. No claim was filed thereafter and action was instituted almost ten months thereafter.

It will be observed from an examination of quoted provisions of the statute that there are two specific limitations upon the right of recovery by action under the workmen's compensation law. The first is the filing of claim by the employee within six months of the injury. The second is the filing of petition with the workmen's compensation court within one year.

This court in cases where the substantial character of the injury was known at the time has uniformly upheld the literal terms of these two limitations. *Kurtz v. Sunderland Bros. Co.*, 124 Neb. 776, 248 N. W. 84; *Welton v. Swift & Co.*, 125 Neb. 455, 250 N. W. 661; *Park v. School District*, 127 Neb. 767, 257 N. W. 219; *Dunlap v. City of Omaha*, 131 Neb. 632, 269 N. W. 422; *Price v. Burlington Refrigerator Express Co.*, 131 Neb. 657, 269 N. W. 425. However in a group of cases where it was found that the true character of the injuries was not known at the time and that they were progressive the limitations did not literally apply. *Selders v. Cornhusker Oil Co.*, 111 Neb. 300, 196 N. W. 316; *McGuire v. Phelan-Shirley Co.*, 111 Neb. 609, 197 N. W. 615; *City of Hastings v. Saunders*, 114 Neb. 475, 208 N. W. 122; *Travelers Ins. Co. v. Ohler*, 119 Neb. 121, 227 N. W. 449; *Astuto v. Ray Gould Co.*, 123 Neb. 138, 242 N. W. 375; *Flesch v. Phillips Petroleum Co.*, 124 Neb. 1, 244 N. W. 925; *Montgomery v. Milldale Farm & Live Stock Improvement Co.*, 124 Neb. 347, 246 N. W. 734. It is clear however that under such conditions the limitations of these sections

apply to the date of discovery of the true character of the injury.

In *Flesch v. Phillips Petroleum Co., supra,* it was stated: "Liberally construing the workmen's compensation law to give effect to its provisions and purposes, it has often 'been held that failure to give the employer notice of a claim for compensation within the statutory period of six months is not necessarily a defense, if the accidental injury is latent and progressive and cannot with reasonable certainty be recognized at first as compensable, where notice is given within six months from the time the employee acquires knowledge of a compensable disability as a result of the accident."

In *Montgomery v. Milldale Farm & Live Stock Improvement Co., supra,* it was stated: "The delay in making a claim during this period, while he had reason to believe his injury was temporary and not of a serious nature, did not bar the proceeding for compensation until six months from the time he discovered through scientific examination by his physician by means of X-rays that his disability was total and permanent, the workmen's compensation law being liberally construed to give effect to its purposes, as it should be." Obviously the proceeding here referred to is the filing of claim for compensation.

The conclusion is inescapable that appellee, if an employee of appellants, is barred of a recovery under the workmen's compensation law by his failure to file claim within the limitation of time for such filing fixed by such law.

The judgment of the district court is reversed and appellee's action is dismissed.

REVERSED AND DISMISSED.