O'TOOLE et al. v. UNITED STATES et al.

Civ. No. 1343.

United States District Court
D. Delaware.

July 14, 1952.

Arthur G. Connolly and Januar D. Bove, Jr., Wilmington, Del., for plaintiffs Charlotte M. O'Toole, Charlotte M. O'Toole, administratrix of the estate of Thomas B. O'Toole, and St. Paul Fire & Marine Ins. Co.

Herbert L. Cobin and William H. Foulk, Wilmington, Del., for plaintiff Robert J. Wilson.

William Marvel, U. S. Atty., and Michael A. Poppiti, Asst. U. S. Atty., Wilmington, Del., for defendant United States.

James R. Morford, Wilmington, Del., Vernon E. West, Corp. Counsel, Oliver Gasch, Asst. Corp. Counsel, and John F. Doyle, Asst. Corp. Counsel of the District of Columbia, Washington, D. C., for defendant, District of Columbia.

LEAHY, Chief Judge.

Thomas B. O'Toole died as a result of injuries sustained in a motor vehicle accident on July 9, 1950. The Complaint seeks damages from defendants, the United States of America and the District of Co-

lumbia, for personal injuries to plaintiffs, Charlotte M. O'Toole and Robert J. Wilson. The Estate of Thomas B. O'Toole claims damages for his wrongful death. The complaint also contains a count for the destruction of an automobile owned by O'Toole.[1] The collision occurred on Route No. 14, south of Milford, Delaware, between O'Toole's automobile and an 18-ton M-4 tractor alleged to be owned by defendants. The tractor was en route from Washington, D. C. to Fort Miles, Delaware. It was proceeding in a southerly direction and was operated by one Harrington, a member of the District of Columbia National Guard. The tractor crossed the northbound lane of the highway and collided with the automobile driven by plaintiff Wilson in which O'Toole and his wife were passengers. This tractor was following another tractor which was operated by Griggs, another member of the District of Columbia National Guard. Plaintiffs contend that at the time of the accident both Harrington and Griggs were agents or employees of the United States of America and of the District of Columbia.

It is conceded that at the time of the accident the National Guard of the District of Columbia was not in active federal military service of the United States. Defendant United States has moved for summary judgment in its favor on the ground the accident which forms the basis of plaintiffs' causes of action against the United States did not occur as a result of the negligence of an employee of the United States; hence, this court does not have jurisdiction of the claim under the Federal Tort Claims Act, 28 U.S.C., §§ 1346(b), 2671 and 2674.

Defendant District of Columbia claims it was not properly served with process. It seeks dismissal of the action.

1. The first question is whether a member of the National Guard of the District of Columbia is an employee of the United States so as to subject it to liability under the Federal Tort Claims Act, when the National Guard of the District of Columbia was not in active federal military sevice at the time of the O'Toole collision.

 The liability of the United States is clearly set forth under the act.[2] If plaintiffs may maintain their actions against the United States, they must show Harrington and Griggs were employees of the United States acting within the scope of their employment. If they are unable to do this, as a matter of law, this defendant should have summary judgment. The National Guard of the District of Columbia is similar to such organizations in various states. Before deciding whether the employees of such Guard are employees of the federal government, an examination is required to fix the status of such Guard. The District of Columbia occupies a unique legal relation to the national government. Clause 17, § 8, art. 1 of the federal Constitution possesses exclusive exercise of legislation of the geographical area to be acquired for the "seat of the Government of the United States." If the District of Columbia is a separate political community, it may in a qualified sense be called a "state". Metropolitan Railroad Company v. District of Columbia, 132 U.S. 1, 10 S.Ct. 19, 33 L.Ed. 231; National Mut. Ins. Co. of District of Columbia v. Tidewater Transfer Co. Inc., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556. In 1871,

---

1. Charlotte M. O'Toole, as widow, demands judgment of $1,250,000 for the wrongful death of her husband. Individually, for personal injuries, she seeks damages of $75,000. Robert J. Wilson seeks damages for $100,000. Charlotte M. O'Toole, as Administratrix, and St. Paul Fire and Marine Insurance Company, the latter on a claim of subrogation, seek $3,000 for damages to the Cadillac car.

2. "2674. Liability of the United States
"The United States shall be liable, re-

specting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances * *."
And in Title 28 U.S.C. § 2671,
"2671. Definitions
" * * * 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States * * * temporarily or permanently in the service of the United States, whether with or without compensation."

Congress created a municipal corporation called "the District of Columbia" with the powers, inter alia, to sue and be sued, contract, etc., and to acquire all other powers of a municipal corporation. District of Columbia v. Bailey, 171 U.S. 161, 18 S.Ct. 868, 43 L.Ed. 118; District of Columbia v. Cluss, 103 U.S. 705, 26 L.Ed. 445. It is not an agency of the government itself; it is a municipal corporation responsible for the negligence of its employees where such results in personal injuries to individuals. Barnes v. District of Columbia, 91 U.S. 540, 23 L.Ed. 440; Harris, by his next friend, &c. v. District of Columbia, 256 U.S. 650, 41 S.Ct. 610, 65 L.Ed. 1146. Its employees are not employees of the federal government. Donovan v. U. S., 21 Ct.Cl. 120; 22 Op.Atty.Gen. 59.

The status of the National Guard of the District of Columbia is fixed by statute.[3] The National Defense Act states clearly that members of the National Guards of the United States shall not be deemed to be employees of the United States except when so ordered under law. The question has arisen before as to whether a member of the National Guard, not in active service, is an employee of the government so as to make it liable for the negligence of a guardsman under the Federal Tort Claims Act. It has been held that such a person is not an employee of the United States.

In Glasgow v. United States, D.C., 95 F.Supp. 213, 214, plaintiff contended that a member of the National Guard of Tennessee while driving a truck lent to his unit by the Army, in a convoy of the State Guard en route to Fort Jackson, North Carolina, where he was to participate in maneuvers in field training, was an employee of the government within the purview of the Federal Tort Claims Act. In deciding for the government, the court said:

"This court is led unerringly to the conclusion that a member of the National Guard of a state, which has not been or-

3. a. 32 United States Code Annotated, § 4: (as amended in 1933, 48 Stat. 155; 1947, 61 Stat. 192): "The National Guard of each State, Territory, and the District of Columbia shall consist of members of the militia voluntarily enlisted therein, who upon original enlistment shall not be less than seventeen or more than forty-five years of age * * *."

b. 32 United States Code Annotated, § 4a: (as amended in 1933, § 5, Ch. 87; 48 Stat. 155): "The National Guard of the United States is hereby established. It shall be a reserve component of the Army of the United States and shall consist of those federally recognized National Guard units * * * officers, warrant officers, and enlisted members of the National Guard of the several States, Territories, and the *District of Columbia*, who shall have been appointed * * * *Provided, That the members of the National Guard of the United States shall not be in the active service of the United States except when ordered thereto in accordance with law, and, in time of peace, they shall be administered, armed, uniformed, equipped, and trained in their status as the National Guard of the several States, Territories, and the District of Columbia, as provided in this title * * *."

c. 32 United States Code Annotated,

§ 20: (as amended in 1933, § 4, Ch. 87, 48 Stat. 155): "Officers of the National Guard of the United States, while not on active duty, *shall not, by reason solely of their appointments, oaths, commissions, or status as such, or any duties or functions performed or pay or allowances received as such, be held or deemed to be officers or employees of the United States, or persons holding any office of trust or profit or discharging any official function under or in connection with any department of the Government of the United States.*"

d. 32 United States Code Annotated, § 81: (as amended in 1933, 48 Stat. 160; 1935, 49 Stat. 392): "When Congress shall have declared a national emergency * * * the President may, under such regulations * * * order into the active military service of the United States, to serve therein for the period of the war or emergency, unless sooner relieved, any or all units and members of the National Guard of the United States. *All persons so ordered into the active military service of the United States shall from the date of such order stand relieved from duty in the National Guard of their respective States, Territories, and the District of Columbia so long as they shall remain in the active military service of the United States * * *."* (Emphasis added.)

dered into the active Federal service, is not an employee of the Government so as to render the United States liable for his negligence under the Federal Tort Claims Act.[1]

"The tendency of the Congress to extend to members of the National Guard engaged in periods of training or field instructions more and more benefits which have long been available to members of the Regular Army has not passed unnoticed. Benefits now available to guardsmen who suffer death or disability during periods of training include pensions, compensation, death gratuity, retirement pay, hospital benefits, and pay and allowances.[2] But neither the provision for these gratuities nor the assumption by the Government of the obligation to pay the personnel [3] of and furnish equipment [4] for the National Guard of the several states argue more than the alertness of the Congress to provide adequately for the National defense. Inducements to enlistment are no less important than provisions for training.

"Not every person who accepts or is eligible to receive its bounty is an employee of the Government. In an era of subsidies and grants in aid, such a conclusion would be a complete non sequitur."

■ The case of United States v. Holly, 10 Cir., 192 F.2d 221, 223, cited to me is not

in point for there the court was concerned with a "unit caretaker", a sui generis member of the Guard. The position of unit caretaker was created by federal statute with duties prescribed by detail regulations promulgated by the Secretary of the Army. Caretakers' compensation is paid entirely from federal funds. ("There is present every element necessary to constitute a unit caretaker an employee of the United States.[4] The fact that under the regulations the caretaker must be a member of the National Guard and perform duties for the state is immaterial. The injuries were caused while the caretaker was in the performance of his duties for the United States, not the state.") In the case at bar I do not find any facts or law which would warrant my holding Harrington and Griggs were employees of the United States within the meaning of the Federal Tort Claims Act, or that they were performing analogous services to that of unit caretakers.

■ 2. Defendant District of Columbia contends it is not amenable to service of process under 4590 § 15 of the Revised Code of Delaware, 1935. The Secretary of State of Delaware was served with a copy of the complaint and summons under the non-resident motor vehicle user statute.[5] Such service I think does not give the District Court of Delaware jurisdiction over the municipal corporation of the District of

"1. Cf. Mackay v. United States, D.C., 88 F.Supp. 696; Fries v. United States, 6 Cir., 170 F.2d 726; Lind v. Nebraska National Guard, 144 Neb. 122, 12 N.W.2d 652, 150 A.L.R. 1449; Spence v. State, 159 Misc. 797, 288 N.Y.S. 1009; State v. Industrial Commission (State v. Johnson), 186 Wis. 1, 202 N.W. 191; Nebraska National Guard v. Morgan, 112 Neb. 432, 199 N.W. 557; Muller v. City of New York, 189 App.Div. 363, 178 N.Y.S. 416.

"2. Title 32 U.S.C.A. §§ 160a, 164a, 164c and 164d.

"3. Title 32 U.S.C.A. §§ 143, 144, 145, 154, 156 and 158.

"4. Title 32 U.S.C.A. §§ 31 et seq.

4. Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440; United States v. Wholesale Oil Co., Inc., 10 Cir., 154 F.2d 745; Jones v. Goodson, 10 Cir., 121 F.2d 176.

5. The statute provides: "Any non-resident owner, operator or driver of any motor vehicle, not registered under the laws of the State of Delaware providing for the registration of motor vehicles, who shall accept the privilege extended by law to non-residents of this State to operate or drive such motor vehicles on the public streets, roads, turnpikes or highways of this State by operating or driving such motor vehicle or by having the same operated or driven on any public street, road, turnpike or highway of this State shall by such acceptance of said privilege be deemed thereby to have appointed and constituted the Secretary of State of the State of Delaware, his, her, its or their agent for the acceptance of legal process in any civil action against such non-resident owner, operator or driver arising or growing out of any accident or collision occurring within this State in which such motor vehicle, operated as

Columbia.[6] A case in point is Clark County, Nevada v. City of Los Angeles, D.C. Nev., 92 F.Supp. 28, 32. There service of process was made upon the Secretary of State of Nevada under the provisions of a non-resident statute. The court showed that jurisdiction of the person of a defendant may be obtained only by compliance with F.R. 4(a) 28 U.S.C.A. and said: "In the federal courts service of summons may be made in no manner other than that set forth in the Federal Rules of Civil Procedure and in such Rules *we find no provision whereby a municipal corporation may be brought within the jurisdiction of a federal court sitting in a state other than the state of which the municipal corporation is a creature.*" (Emphasis added.)

■ Moreover, Congress has fixed the persons upon whom service may be made in suits against the District of Columbia. 18 Stat. 117, Ch. 337, § 2.[7] And the Secretary of State of Delaware is not one of the persons named. Under the Constitution, Art. 1, § 8, Congress has exclusive legislative authority over the District of Columbia. Where Congress provides a method of service in such suits that method must be regarded as exclusive.

■ In addition, as an auxiliary support for the position of the defendant District of Columbia, there is no proper venue here. A trial of this cause here in Delaware would involve matters of purely local concern to the District of Columbia. Under

such facts the matter must first be passed on by the Court of Appeals for the District of Columbia. Busby v. Electric Utilities Employees Union, 323 U.S. 72, 65 S.Ct. 142, 89 L.Ed. 78.

■ This involves the principle that proper venue for suits against a municipal corporation lies in the district of its situs as an action against a municipal corporation is inherently local and, absent statute, must be brought where the municipality is situated. Delaware recognizes the rule.[8]

■ 3. In any event this court has no jurisdiction over the District of Columbia if the instant suit is bottomed on the Federal Tort Claims Act. The Act has no application to the District of Columbia. In Douffas v. Johnson, D.C.D.C., 83 F.Supp. 644, 645, the court said:

"The Federal Tort Claims Act is found in Section 2674 of new Title 28 of the United States Code. That section provides that the United States shall be liable in respect to certain tort claims in the same manner and to the same extent as a private individual. It should be observed that this statute provides that the United States shall be liable—not any of its agencies as such.

"It is the view of the Court that the Federal Tort Claims Act, and the waiver of immunity therein contained, applies only if the action is brought against the United States in respect to a

aforesaid, is involved; and said acceptance shall be a signification of the agreement of such non-resident that any such process when so served, as aforesaid, shall be of the same legal force and validity as if served upon such non-resident personally within this state."

6. Service of process in a federal district court upon an individual or a private corporation under a state statutory counterpart of Delaware Code 4590 is valid service by reason of F.R. 4(d) (7) which specifically applies, as will be noted, only to defendants of the classes defined in Rule 4(d) (1) and 4(d) (3). See Sussan v. Strasser, E.D.Pa.1941, 36 F.Supp. 266; Magelssen v. Hale, W.D.Mo.1948, 81 F.Supp. 138. The validity of this procedure as to non-resident defendants

who are individuals or private corporations is recognized by the bar in the District of Delaware although there is no reported case. But the District of Columbia is a municipal corporation and Rule 4(d) (7), by its very language, is inapplicable.

7. See, too, 1–901, D.C.Code, 1940.

8. In Eastern Union Co. of Delaware v. Moffat Tunnel Improvement District, 6 W.W.Harr. 488, 178 A. 864, 865, the court stated: "The law seems to be quite well settled that a municipal corporation is liable to suit only in the State of its creation. Many of the authorities are collected in Parks [Co.] v. City of Decatur, 6 Cir., 138 F. 550; Marshall v. Kansas City, 95 Kan. 548, 148 P. 637, L.R.A.1915F, 1025 and note. * * *"

810

tort committed by an agent or employee of the United States. This claim is asserted against the District of Columbia and not against the United States, and, therefore, does not appear to be within the purview of the Federal Tort Claims Act.

"It should be observed that Section 2671, which contains certain definitions, defines the term 'Federal agency' as including Executive departments and independent establishments of the United States, and government corporations. It is very doubtful whether the District of Columbia is included within this category. But irrespective of this consideration, the term 'federal agency' is defined for an entirely different purpose. It is defined in connection with Section 2672, which relates to the administrative adjustment of certain claims. When the Act comes to describe waiver of immunity, in Section 2674, it specifically limits the provision to the United States as such. It provides that the United States shall be liable in respect to certain tort claims in the same manner and to the same extent as private individuals. It is clear that this statute is intended to apply only if suit is brought against the United States.

"Undoubtedly the trends of public policy are in the direction of waiving sovereign immunity to suit, which is outmoded and which rests on an old principle of English common law. Perhaps it is unfortunate that the Federal Tort Claims Act does not include the District of Columbia. I think it should. But the remedy lies with the Congress.

"The Court is of the opinion that the District of Columbia is not covered by the Federal Tort Claims Act in its present form, and for that reason the motion to dismiss the third-party complaint as against the District of Columbia is granted."

Jurisdiction based upon the Tort Act does not exist in this cause against the District of Columbia in a suit instituted in the District Court of Delaware.

While the complaint does not explicitly allege that the action is against the District of Columbia, based on a diversity count, there is, however, an allegation that the matter in controversy exceeds $3,000. Even if the action is against the District of Columbia and founded on a diversity basis, the result here would be the same.

Orders in favor of both defendants may be submitted, although there may be a question as to whether plaintiffs may have removal of this cause to the District of Columbia if the cause of action is based simply on diversity of citizenship.